## Case No. 16,572.

UNITED STATES v. TWENTY–SIX DIAMOND RINGS.

[1 Spr. 294; [1] 18 Law Rep. 250.]

District Court, D. Massachusetts. June, 1855.

CUSTOMS DUTIES — FORFEITURES — OMISSION FROM MANIFEST—CONCEALMENT OF GOODS—CONSTRUCTION OF LAWS—CERTIFICATE OF PROBABLE CAUSE OF SEIZURE.

1. In a libel of information against certain goods, under the 68th section of the revenue collection act (Act 1799, c. 22 [1 Stat. 677]), it is necessary for the government to prove that the goods were "concealed:" and the fact that the goods were not entered upon the manifest, was held not sufficient for this purpose. The concealment which subjects goods to forfeiture, under the 68th section, must be a concealment from the officers of the customs.

[Cited in The Gala Plaid, Case No. 5,183.]

2. The penalty of the 24th section of the same act does not apply to articles imported in a foreign vessel. The vessel must be owned in whole or in part, by citizens or inhabitants of the United States, to make the penalty attach. A certificate of reasonable cause may be granted for doubts of the law.

[See The Antilles, Case No. 489.]

This was a libel of information, filed by the United States, against certain goods brought into the port of Boston, in the British steamer Africa, and contained two counts; the first framed upon the 68th section of the revenue collection act (Act 1799, c. 22 [1 Stat. 677]): "That every collector, &c., shall have full power and authority to enter any ship or vessel in which they shall have reason to suspect any goods, wares or merchandize, subject to duty, are concealed, and therein to search for, seize and secure any such goods, wares or merchandize; * * * and all such goods, wares or merchandize, on which the duties shall not have been paid, or secured to be paid, shall be forfeited." And the second, upon the 24th section of the same act: "That if any goods, wares and merchandize shall be imported or brought into the United States, in any ship or vessel whatever, belonging in the whole or in part to a citizen or citizens, inhabitant or inhabitants of the

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

United States, from any foreign port or place, without having a manifest or manifests on board, * * * or which shall not be included or described therein, or shall not agree therewith, in every such case, the master or other person having the charge or command of such ship or vessel, shall forfeit and pay a sum of money equal to the value of such goods not included in such manifest or manifests, and all such merchandize not included in the manifest, belonging or consigned to the master, mate, officers or crew of such ship or vessel, shall be forfeited."

B. F. Hallett, U. S. Dist. Atty., for libellant, cited U. S. v. Certain Hogsheads of Molasses [Case No. 14,766].

F. E. Parker, for claimant, cited U. S. v. Three Hundred and Fifty Chests of Tea, 12 Wheat. [25 U. S.] 486.

The libellant's witnesses testified, that when the steamer came to her moorings in Boston, and before she was made fast, the master notified the revenue officers that there had been a robbery on board, and that no passengers were to land, until police officers were sent for, to make a search. No notice to this effect, however, was given to the passengers, though they were stopped from landing, and some of them seemed to expect a search. After the steamer was made fast, and before any passengers or baggage had landed, two of the passengers, named Salmon and Blanckensee, came to the purser, on the main deck, and the latter openly handed him a small parcel, which was afterwards found to contain twenty-six diamond rings, with the request to enter it on the ship's manifest. This was done in the presence and hearing of a revenue officer, who stepped up to the parties, told them it was too late, and seized the parcel. It was further admitted, that Salmon and Blanckensee had also four large cases of jewelry on board, which were on the manifest, and were stowed with the cargo. The claimant introduced, as a witness, C. M. Salmon, the passenger who had charge of the rings, who testified that he left England in the Africa, pursuant to a written agreement with one Isaac Blanckensee, jeweller, of London, for the purpose of establishing the latter's son, Julius Blanckensee, (his fellow-passenger,) in the jewelry business at Montreal; that the four cases were shipped by Isaac Blanckensee's agents at Liverpool, before his (Salmon's) arrival at that place, and that the twenty-six diamond rings arrived afterwards, late on the night before sailing, and the agents declined to put them on the ship's manifest, as too late; that he took them on board, in his portmanteau; and being on his first absence from England, and a stranger to the usages of foreign custom-houses, he took the advice of certain fellow-passengers, whose names he gave, to whom he showed the parcel, and directed it in the saloon, and in their presence, to Hill, Sears & Co., Boston, and that before the vessel's arrival at the wharf, he gave it to Julius

Blanckensee to hand to the purser, from whom the purser soon after received it. He further stated that he had never made any concealment of this parcel, and that, with all his goods, it was destined to Montreal, and was to be entered in bond at Boston.

SPRAGUE, District Judge. On the first count two questions arise: (1) Were the rings, in point of fact, concealed? (2) In order to be subject to forfeiture, should they not be found concealed?

The first question only need now be considered. The government witnesses testify only to the fact of the seizure; that they went on board the steamer directly upon her arrival, and soon after saw Salmon, a passenger, step up to the purser, in company with a young man, and ask the purser to put the parcel on the manifest. The officer then interfered, and said it was too late. That is the whole evidence, as to the situation of the rings, prior to the seizure. There is some testimony introduced for the purpose of showing a motive for the delivery on the passenger's part; to wit, that the master told the officers that a search was to be made for stolen goods, and that the passengers were to be detained, on that account. But no proclamation was made, nor was anything said that was intended for the passengers. No notice was given to them in general, much less to Salmon and Blanckensee, in particular. The government testimony fails to prove the concealment. The only fact proved, is the open production of the rings to the purser. Where they had been before, is not stated; and no officer can say that they had not been, during the whole passage, on the captain's table. This is a highly penal statute: the government must prove its case. It utterly fails to do so. There is ground for suspicion; but all the circumstances are consistent with innocence. The goods were not on the manifest. For that there is a distinct count. It may be one circumstance tending to show concealment under the first count; but it goes very little way. The district attorney relied on discrediting the testimony of Salmon; but if he had succeeded in discrediting it, the government still fails, on its own evidence. But I must say, in justice to Mr. Salmon, that his whole statement appears to me consistent and credible.

As to the second count, I think the statute perfectly clear; that the vessel must be owned, in whole or in part, by citizens or inhabitants of the United States. It is suggested that the word "belonging" must apply to "goods," and not to "vessel." In this case, both the goods and the vessel are foreign. But there are sound reasons for applying it to the words "ship or vessel." This regulation as to manifests is a matter of municipal law, which citizens and inhabitants are presumed to know. But foreign vessels, which come within our jurisdiction, cannot be expected to know that a particular document is required by our laws; nor is it reasonable that property on board should be forfeited for the want of such a document.

Libel dismissed.

On a subsequent day, B. F. Hallett, Dist. Atty., moved the court to grant a certificate (under the 89th section,) that there was "reasonable cause of seizure," and cited [Locke v. U. S.] 7 Cranch [11 U. S.] 339.

F. E. Parker, contra, cited [Wood v. U. S.] 16 Pet. [41 U. S.] 366; Conkl. Prac. 317.

SPRAGUE, District Judge. This is a balanced question, and I have not been without serious doubts, as to the proper decision of it. The true interpretation of the words, "reasonable cause" (which seem to be equivalent to "probable cause") I think is given in the case of Wood v. U. S., 16 Pet. [41 U. S.] 342. "Reasonable ground of presumption that the charge is, or may be, well founded;" and that this was intended to qualify the less guarded interpretation put upon the words, in the case of Locke v. U. S., 7 Cranch [11 U. S.] 339. There is no law that makes it in any degree culpable, on the part of the owner of goods, to omit entering them on the manifest; and it would seem hard to allow them to be seized, when no law has been violated. But it seems to be the custom of masters of foreign ships, (though not required by law,) to have a manifest of their cargo. And in this instance, there was a manifest, purporting to contain a schedule of goods subject to duty. This would be no ground of suspicion against a passenger, without some evidence that he was apprised of it. In this case, there is such evidence. He had other similar goods on board, which were actually entered upon the manifest. And the first apearance of the articles in question, was their presentation to the purser, with a request by the passenger, that they should be entered upon the manifest. These diamonds, of the value of more than $1,000, might be carried in the hand, and were kept by the owner, until the vessel was in the dock, and then, some stir being made, they were brought forward. There was another circumstance somewhat suspicious. Accompanying the jewels, was a bill of sale thereof to the passenger, Salmon, himself, indicating that he was the owner; but he stated to the officer that the goods were owned by a third person. Although this was afterwards explained, the discrepancy was, at the time, ground of suspicion. It was under these circumstances that the officer acted. And if a prior concealment, at any time during the passage, was sufficient ground of seizure, the officer had "reasonable cause." But what concealment is sufficient? If goods were concealed, and the vessel should never come into port, the property would not be forfeited; nor if a passenger coming on board of a ship filled, as in this instance, with strangers, secretes his jewels for safety; nor if he keeps them out of the view of the officers of the ship, who have no

right to know of them. I have no doubt that to incur a forfeiture, there must be a concealment from the revenue officers; and there can be no concealment from them, till the vessel is within their jurisdiction. If there had been a previous concealment, with the intent of defrauding the revenue, and the passenger had changed his purpose, before arriving within such jurisdiction, it would not have been a concealment, within the meaning of this statute, but an act preparatory thereto. In this case, soon after the revenue officer came on board, the passenger, without search, openly presented the diamonds. There was very slight ground to suspect any concealment from the officer. And if he knew of the true interpretation of the law, there would be no reasonable cause of seizure. But it is a new interpretation, and the officer may reasonably have been mistaken. U. S. v. Riddle, 5 Cranch [9 U. S.] 311. I grant the certificate of "reasonable cause;" but I wish this decision to be made known; and if a second seizure be made, under similar circumstances, I shall not feel bound to grant a certificate.

