**UNITED STATES of America, Plaintiff,**

**v.**

**ALL MONIES ($637,944.57) IN ACCOUNT NO. 29–0101–62 IN the NAME OF Sami Jabra ABUSADA and/or all Other Accounts and/or Joint Accounts and/or Safe Deposit Boxes of Sami Jabra Abusada, Citizens and Southern National Bank of Florida, Miami, Florida, Defendant.**

**Civ. No. 89–00386 DAE.**

United States District Court, D. Hawaii.

Sept. 11, 1990.

1442

Daniel Bent, Florence T. Nakakuni, Office of the U.S. Atty., Honolulu, Hawaii, for plaintiff.

Hendrik G. Milne, Katherine Clark Silverglate, Squire Sanders & Dempsey, Miami, Fla., Brad Petrus, McCorriston Miho & Miller, Honolulu, Hawaii, for defendant.

## ORDER DENYING UNITED STATES' MOTION FOR CERTIFICATE OF REASONABLE CAUSE

DAVID A. EZRA, District Judge.

The United States' Motion for Certificate of Reasonable Cause came on for hearing before this court on September 10, 1990. The court, having reviewed the motion and the memoranda in support thereof and in opposition thereto, having heard oral arguments of counsel, and being fully advised as to the premises herein, denies the government's motion.

## BACKGROUND

This action is one of 26 civil forfeiture actions brought in this district pursuant to 21 U.S.C. § 881(a)(6) which stem from the arrest and conviction of Emilio Melendez–Bernal ("Melendez"). Melendez was convicted of conspiring to import cocaine into the United States in violation of 21 U.S.C. §§ 952(a) and 960 in September, 1989 and was subsequently sentenced by this court to 27 years of imprisonment.

The government seized the defendant account as well as several others allegedly related to Melendez's drug trafficking op-

eration, relying on the affidavit of Drug Enforcement Administration ("DEA") Special Agent Richard Kempshall ("the Kempshall affidavit") to satisfy its requisite showing of probable cause.

The following facts are set forth in the Kempshall affidavit:[1]

Melendez was a target of undercover surveillance by DEA Agent Robert Aiu ("Aiu"), who posed as a buyer of multi-kilogram quantities of cocaine. Kempshall Affidavit at ¶ 5(C).

On April 29, 1989, Melendez, through a person known as Jose Rivera–Melendez ("Rivera–Melendez"), caused one kilogram of cocaine to be delivered to the hotel room of Agent Aiu's ostensible counterpart in Lima, Peru. *Id.* at ¶ 5(D). Prior to that date, Melendez had instructed a confidential informant to have Agent Aiu wire $4,000.00 to an account in the Israel Discount Bank of Miami, Florida. *Id.* at ¶ 5(E). Aiu did so on April 21, 1989. *Id.* at ¶ 5(F). When Melendez met with this same confidential informant in Honolulu on April 26, 1989, Melendez informed him that he owned a money exchange business in Lima, Peru, in which he regularly handled large accounts of $300,000.00 to $400,000.00; that he had eight bank accounts in the United States; that two of his bank accounts, one in the U.S. and the other in Peru, had $1,000,000.00 in them; and that he used these accounts to receive and make payments in exchange for cocaine trafficking. *Id.* at ¶ 5(H).

Later that same day, Melendez met with Agent Aiu and informed him that he "normally has had money deposited in his bank accounts in payment for cocaine," and further that "he would have money wired from one bank to another, or otherwise transferred, because he preferred not to personally handle cash." *Id.* at ¶ 5(I). Melendez also informed Aiu that he had eight bank accounts in the United States and twelve elsewhere, and that he used these accounts "for drug payments, to launder money, and otherwise for his cocaine-trafficking business." *Id.* at ¶ 5(K)(4). He la-

ter told another DEA agent, Agent Ken Tanaka ("Tanaka"), that "he had banks in Miami as well as a bank in New York to launder his money." *Id.* at ¶ 5(L)(6).

Following delivery of the one kilo sample of cocaine to the hotel room in Lima, Peru on April 29, 1989, Melendez instructed Agent Aiu to deposit $120,000.00 "in several, but at least three of his ... accounts." *Id.* at ¶ 5(M). Soon thereafter, Rivera–Melendez was arrested in Lima and Melendez himself was arrested in Hawaii on drug conspiracy charges. *Id.* at ¶ 5(P).

On Melendez's person at the time of arrest was a deposit slip from Bank Leumi, Miami and some scraps of paper with three other accounts listed. *Id.*

On May 3, 1989, DEA Agent Keith Earnst in Lima provided Agent Aiu with information contained in an address book which had purportedly been seized by Peruvian officials at the premises of Melendez's money-exchange business, "Dirimex, S.A." *Id.* at ¶ 5(R). The address book contained two accounts in Melendez's own name; one in Texas and the other in Bank Leumi, Miami Beach. *Id.* On the basis of this information, DEA Agent Robert Martin obtained warrants to seize all of the listed accounts. *Id.* at ¶ 5(T). The defendant account in Citizens and Southern National Bank of Florida, Miami was one of the accounts listed in this address book.

The defendant account is in the name of claimant Sami Jabra Abusada ("Abusada"). Abusada is a wealthy Peruvian who has been involved in the plastics business in Lima, Peru for over thirty years and, so far as the record before this court reflects, did not know and had never heard of Melendez until these proceedings.

## PROCEDURAL HISTORY

Abusada initially filed his motion for summary judgment on August 7, 1989 and oral argument was heard on October 16, 1989. The claimants argued that the government failed to establish probable cause for seizure or forfeiture, and even

---

**1.** These facts were also set forth in this court's May 29, 1990 order granting claimants' motion for summary judgment. 746 F.Supp. 1432.

assuming there was probable cause, claimants argued that they had submitted unrebutted evidence establishing an innocent ownership defense. The government requested more time to conduct discovery pursuant to Fed.R.Civ.P. 56(f) and on December 14, 1989, this court granted the government's request and continued claimants' motion for 30 days.

On January 12, 1990, claimants filed a motion to strike the affidavit of Agent Kempshall asserting that it is misleading and unfair because the DEA knew at the time of applying for the seizure warrants that (1) the address book found at Dirimex, S.A. did not belong to Melendez, and (2) most of the names listed in the address book were names of legitimate customers of what they believed to be a legitimate business.

On May 29, 1990, after a year of litigation and numerous continuances, this court granted summary judgment in favor of the claimant Sami Jabra Abusada ("Abusada") in this civil forfeiture action. The court indicated that at the time of seizure the government did not have probable cause to believe that the defendant account was related to an illegal drug transaction and that even if evidence discovered post-seizure demonstrated probable cause to forfeit, the claimants had presented an uncontroverted innocent ownership defense.

The government requested numerous stays of this court's May 29, 1990 order. On July 31, 1990, this court denied the government's third motion for extension of the stay and ordered that the government return the defendant account to the claimants, following the Ninth Circuit Court of Appeals' denial of the government's motion for stay pending appeal on June 28, 1990.

■ The government now moves for a certificate of reasonable cause pursuant to 28 U.S.C. § 2465.

## DISCUSSION

28 U.S.C. § 2465 provides as follows:

Upon entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

The standard for determining reasonable cause is the same as probable cause. *U.S. v. One (1984) Mercedes Benz Automobile*, 673 F.Supp. 387 (D.Haw.1987).

■ To establish probable cause the government must have reasonable grounds to believe the property was related to an illegal drug transaction, supported by less than *prima facie* proof, but more than mere suspicion. *United States v. $5,644,540.00*, 799 F.2d 1357, 1362 (9th Cir.1986). "If the aggregate of facts gives rise to more than mere suspicion that the property was exchanged for or intended to be exchanged for drugs" then probable cause has been shown. *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir.1988).

The government must rely on sufficiently reliable information to warrant a reasonable belief that the property is subject to forfeiture. *U.S. v. Dickerson*, 873 F.2d 1181, 1185 (9th Cir.1988); *United States v. One 56–Foot Yacht Named Tahuna*, 702 F.2d 1276, 1282 (9th Cir.1983). However, the government need not show that the evidence relied upon to establish probable cause is admissible pursuant to Fed.R. Civ.P. 56(e). *One 56–Foot Yacht Named Tahuna*, 702 F.2d at 1283.

■ Although this court granted claimants' motion for summary judgment based on their innocent ownership defense, the court made it clear in its Order Granting Claimants' Motion for Summary Judgment that the facts supported a finding the government did not have probable cause at the time of seizure. *See* Order 746 F.Supp. at p. 1438.

The government seized the defendant account based on the affidavit of Agent Kempshall. That affidavit established that Melendez told a confidential DEA infor-

mant that he owned a money-exchange business in Lima, Peru; that he had eight bank accounts in the United States which he used to deposit proceeds from his cocaine trafficking business and several others outside Peru; and that one of the accounts in the United States had a million dollars in it. After the arrest of Melendez on April 29, 1989, Melendez's money-exchange firm in Lima, Peru was searched based on the affidavit of DEA Agent Peter K. Byrne.

Purportedly, the Peruvian police seized an address book from the Dirimex S.A. money-exchange business which lists over thirty bank accounts in New York and Miami, including the Abusada account. On or about May 19, 1989, the Abusada account in the Citizens and Southern National Bank of Florida in Miami was seized by the government and transferred to the District of Hawaii.

Subsequently, it came to light through the deposition testimony of Agent Earnst that, *at the time the accounts were seized,* DEA Agent Earnst, who was not present at the search of Dirimex, did not know if the address book belonged to Melendez. Agents Aiu and Byrne relied on the apparently unsubstantiated conclusions of Earnst and/or the Peruvian police when they represented that the address book belonged to Melendez at the time of seizure.

Furthermore, it also came to light that at the time the defendant account was seized, the government had knowledge through DEA Agent Tanaka that Melendez used a legitimate money exchange business which was run by others as a front to launder his money through Israel Discount Bank and Bank Leumi in Miami. Yet the government seized the defendant account at the Citizens and Southern National Bank of Florida asserting that it was the proceeds of illegal drug transactions.

All of these factors, as discussed in this court's previous order, indicate that the government lacked probable cause to seize the defendant account.

The government now argues that nonetheless the "aggregate of facts" establish that it had probable cause *to seize* the defendant account as the proceeds of illegal drug transactions. Many of the facts relied upon by the government at this point, however, were discovered *after* the seizure. For example, the following "facts" asserted by the government in their motion did *not* form the basis for the initial seizure:

(1) Abusada personally engaged in "numerous money exchange transactions with Luz Mary Aguad;" [2]

(2) a relationship between *any* bank account which *might* contain proceeds of drug transactions (e.g., the "Eurosport" account and the defendant account.)

Accordingly, at the time of seizure, the government's showing that the defendant account, one of over thirty listed in an address book, was related to an illegal narcotics transaction did not rise above the level of "a mere suspicion." *See U.S. Currency $83,310.78*, 851 F.2d at 1235. This court finds, for purposes of this motion, that the attenuated connection between the defendant account and Melendez's narcotics business was not enough to establish probable cause to seize the account.

The government, however, contends that it seized the accounts in good faith and therefore, this court should cause the certificate to issue even if the government in fact lacked probable cause. The government cites to *United States v. 83 Sacks of Wool and 5,974 Sheepskins*, 147 F. 747, 749 (D.Maine 1906) (*"83 Sacks of Wool"*), an early twentieth century case from the District Court of Maine to support its position. In addition to the fact that *83 Sacks of Wool, id.*, pre-dates the forfeiture statutes at issue here by decades, that district court decision does not hold that "good faith" absent probable cause justifies issuance of a certificate. In fact, the district court found that there was "reasonable suspicion" for seizing the imported wool which was the subject of that case. *Id.* at 749–750.

---

**2.** Abusada testified that he used the services of Mary Luz Aguad on four or five occasions to make transfers to his account in the United States.

Clearly, Congress enacted 28 U.S.C. § 2465 for the important purpose of preventing the "chilling effect" that liability for improvident seizures based on reasonable cause might have on the government. Nonetheless, the statute clearly requires "reasonable cause" which has been interpreted by the courts to mean "probable cause." *U.S. v. One (1984) Mercedes Benz Automobile*, 673 F.Supp. at 387. The statute does not provide, nor does any controlling case law indicate, that the government should be insulated from liability by a certificate of reasonable cause in *all* circumstances simply relying upon the assertion of good faith.[3] Such an interpretation of the statute would have the practical effect of ratifying every seizure despite its lack of a legal or factual basis and would negate the statutory requirement of reasonable cause. Had Congress intended a "good faith" exception to the requirement of reasonable cause for the issuance of a reasonable cause certificate, it would have expressly provided that exception within the statute.

Therefore, having found that probable cause did not exist at the time the government seized the defendant account and brought it to the District of Hawaii, this court cannot issue a certificate of reasonable cause.

### CONCLUSION

For the reasons set forth above, and for the reasons set forth in this court's order granting claimants' motion for summary judgment, the court DENIES the government's motion for a certificate of reasonable cause.

IT IS SO ORDERED.

---

**3.** The court does not, and need not at this time, reach the question of whether or not the government acted in good faith in seizing the defendant account.