UNITED STATES of America, Plaintiff,

v.

PARCELS OF REAL PROPERTY WITH THE BUILDING, APPURTENANCES, AND IMPROVEMENTS LOCATED AT 255 BROADWAY, HANOVER, MASSA-CHUSETTS, One Lot of U.S. Currency in the Amount of $874,510.00, One Lot of U.S. Currency in the Amount of $26,-500.00, One Lot of U.S. Currency in the Amount of $5,310.00, and One Lot of U.S. Currency in the Amount of $4,490.00, Defendant.

Civ. A. No. 89–1160–WD.

United States District Court, D. Massachusetts.

May 29, 1992.

Corrected June 25, 1992.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This case raises important questions about the interaction of a statute nearly 200 years old with more modern laws of civil forfeiture and litigation cost shifting against the government. After the claimant in this action—the mother of a drug dealer convicted of conducting his business

from her home—successfully contested the government's efforts to forfeit real property and currency belonging to her, the United States moved pursuant to 28 U.S.C. § 2465 for a certificate of reasonable cause for its actions. The claimant opposed the motion as to the currency and moved in turn for costs and attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Because I find that the government had reasonable cause for the initial seizure and was substantially justified in pursuing its forfeiture action to trial, I will issue a certificate of reasonable cause and deny the claimant's EAJA request for costs and fees.

## I. FACTUAL BACKGROUND

During July of 1988, Drug Enforcement Administration Special Agent Allen Lively received information from a reliable informant that 1,500 pounds of marijuana were being shipped to Boston to a Jeffrey Soule. Police officers began a visual surveillance of 255 Broadway in Hanover, Massachusetts, a residence where Soule was apparently living, and observed a car described by the informant making a large delivery to a barn attached to the house. Later the same day, the police arrested the car's driver and found on his person marijuana and a list of numbers and amounts consistent with the expected narcotics delivery. A canine sniff search also indicated that the driver's truck contained marijuana. *See* Affidavit of Allen Lively at ¶¶ 3–12, Ex. B., Complaint.

Based on this information, the Hanover police officers obtained warrants to search, among other locations, the residence at 255 Broadway. The search was executed in the early morning of July 24, 1988, during which time the police seized large quantities of marijuana and cocaine, and several lots of currency totalling over $900,000. The instant motions are concerned with a

disputed amount of the cash found in a kitchen hutch in white envelopes.[1]

On April 17, 1989, Jeffrey Soule pled guilty to charges of conspiracy to possess marijuana and possession with intent to distribute marijuana. On May 25, 1989, the plaintiff United States filed its verified Complaint for Forfeiture in Rem pursuant to 21 U.S.C. §§ 881(a)(6) and (a)(7). The Complaint sought a warrant and monition to the United States Marshal to seize and take custody of the real property at 255 Broadway and the various lots of currency found at the residence, including the cash in the hutch. The Complaint further requested a judgment of forfeiture for those properties. On June 1, 1989, based upon the verified Complaint and supporting papers, I issued the warrant and monition and the properties were officially taken into custody.

On June 14, 1989, Claire Soule, Jeffrey Soule's mother and the owner of the house at 255 Broadway, filed a Notice of Claim, seeking release of the real property and certain of the monies found in the hutch, *see* note 1 *supra*, both of which she claimed to own lawfully. She made no claim with respect to the remaining lots of currency found in the house. Her claims to the currency and the real property were separately resolved at trial. First, upon completion of a two-day non-jury proceeding, I determined that the plaintiff could not meet its primary burden of establishing probable cause for the forfeiture of the $2,450.00 in currency which the claimant sought to have returned. A jury proceeding was then conducted as to the real property. After a four day trial, the jury returned a finding that Mrs. Soule was an innocent owner of the property and neither knew of nor consented to her son's unlawful use of the residence for his drug dealing.

1. According to the Complaint at ¶ 6 and DEA agent Lively's attached Affidavit at ¶ 12, the envelopes in the hutch contained $4,490.00. According to the return filed by the officer executing the search warrant, also attached to the Complaint, the hutch contained only $2,911.00. The police officer's incident report at 9, Ex. D.,

Complaint, refers to an amount of $6,000.00 in the hutch. In her Notice of Claim, the claimant initially sought the $4,490.00 specifically alleged in ¶ 6 of the Complaint as being in the hutch. At trial, the claimant represented that she sought the return of only $2,450.00 in cash.

At the conclusion of the first hearing, during which the issue of the currency was adjudicated, the government moved for a certificate of reasonable cause pursuant to 28 U.S.C. § 2465. Mrs. Soule opposed the motion as to the currency found in the hutch and moved under 28 U.S.C. § 2412 for attorney fees and costs associated with her opposition to the forfeiture of that lot of money.[2] While the opposing motions are interdependent and influence one another, they are not mutually dispositive. Accordingly, I will address them in turn.

## II. THE CERTIFICATE OF REASONABLE CAUSE

The government's motion for a certificate of reasonable cause rests upon 28 U.S.C. § 2465, which provides,

> Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; *but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.*

(Emphasis added). This statute has existed, in one form or another, since 1799, and the rule it states "has been the law of the land almost since the foundation of the government." *Agnew v. Haymes*, 141 F. 631, 640 (4th Cir.1905). The certificate the

statute describes immunizes a seizing or prosecuting official from liability and bars a successful claimant from recouping costs where the official had "reasonable cause" to seize property later shown to have been wrongfully taken from the claimant. *See United States v. Tito Campanella Societa Di Navigazione*, 217 F.2d 751, 756 (4th Cir.1954) (statute protects against liability for costs or damages where there was reasonable cause to institute forfeiture proceeding later dismissed). Despite the rule's venerable genealogy in the statute books, few courts have grappled with its application in the context of contemporary civil forfeiture law.[3] I thus look to the articulated policies and purposes behind the statute to inform my judgment regarding its operation in the present case.

The Supreme Court has explained generally that the certificate, as prescribed by § 2465's predecessor, is designed to "protect the person at whose instance the seizure was made, should an action of trespass be brought against him by the claimant for the wrongful seizure of the latter's property." *United States v. Abatoir Place*, 106 U.S. (16 Otto) 160, 162, 27 L.Ed. 128 (1882). Later courts have elaborated upon this notion of the certificate as a means of "protecting" officials charged with responsibility for seizing potentially forfeitable property. The United States District Court for the District of Maine explained that, while the certificate of reasonable cause should only issue where clearly warranted by the evidence,

> ... the court ought to grant this certificate where the testimony shows affirmatively that the officers who instituted the

---

**2.** Mrs. Soule does not contest the issuance of a certificate of reasonable cause for the seizure of her real property or the other lots of currency. *See* Claimant's Memorandum of Law in Support of Opposition to Plaintiff's Motion for a Certificate of Reasonable Cause at 1–2.

**3.** The parties have not raised, and consequently I do not address, whether or to what degree the developing law of qualified immunity crystallized in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), parallels or diverges from the long-standing statutory immunity provided by § 2465 and its predecessors. I note in passing, nonetheless, that the policy concerns behind the doctrine of

qualified immunity, which immunizes objectively *reasonable* government conduct, resemble those that animate analysis of "reasonable cause" under § 2465. *See generally, Rodrigues v. Furtado*, 950 F.2d 805, 811–12 (1st Cir.1991) (official loses qualified immunity only where search warrant application "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ...") (quoting from *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)); *Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224, 227 (1st Cir.1990) (official not entitled to immunity where he processed an arrest warrant he knew or should have known had been vacated).

proceedings were acting in good faith and under circumstances which would justify a reasonable suspicion; *for, unless government officers shall feel assured that they will receive the protection of the courts in cases where they acted faithfully, carefully, and reasonably, they may become too timid in the performance of their grave and important duties.* *United States v. 83 Sacks of Wool and 5,974 Sheepskins*, 147 F. 747, 749 (D.Me. 1906) (emphasis added). More recently, another District Court has noted, "[c]learly, Congress enacted 28 U.S.C. § 2465 for the important purpose of preventing the 'chilling' effect that liability for improvident seizures based on reasonable cause might have on the government." *U.S. v. All Monies ($637,944.57) in Acc. 29–0101–62*, 746 F.Supp. 1441, 1446 (D.Haw.1990).

■ Thus, § 2465 reflects, at least in part, a concern that officials be able to pursue their duties to seize potentially forfeitable property without the cloud of a future lawsuit or costs dampening their zeal. As long as they are armed with "reasonable cause"—a standard discussed more fully below—such officials may act unencumbered by fear of reprisal. Given this policy concern, it is logical that courts typically look to the moment of seizure in considering whether to grant or deny the certificate. Thus, rather than considering later developments which either support or counsel against the issuance of the certificate, courts limit their review to the evidence as it existed *at the time of seizure* for purposes of assessing whether "reasonable cause for the seizure" existed within the meaning of the statute. *See, e.g., All Monies*, 746 F.Supp. at 1445 (court looks to information officials had at time of seizure; government cannot rely on evidence uncovered *after·* seizure to support motion for certificate of reasonable cause); *U.S. v. One (1) 1984 Mercedes Benz*, 673 F.Supp. 387, 395, 396 (D.Haw.1987) (reasonable cause based on information the police acted on when they seized property); *United States v. Property Identified as 1300 Florida Ave.*, No. 88–3409–LFO, 1989 WL 315184 at *2, 1989 U.S.Dist. LEXIS 11048

at *6 (D.D.C. September 19, 1989) (under § 2465, later assertion of innocent owner defense did not negate government's "original justification for seizing the property in the first instance"); *see also, United States v. Two Thousand Five Hundred Sixty–Nine Dollars and Ninety–Five Cents ($2,569.95)*, 73–2 U.S. Tax Cas. (CCH) ¶ 16,100, 1971 WL 492 (E.D.Mich. October 7, 1971) (reasonable cause must be judged "on the basis of the law as it stood at the time of the seizure since its purpose is to protect the officers who made the seizure"). Both parties seem to agree in their briefs that reasonable cause must be assessed in terms of the evidence available at the time of seizure. *See* Claimant's Memorandum of Law in Support of Opposition to Plaintiff's Motion for a Certificate of Reasonable Cause at 4–5; United States' Response to Claimant's Supplemental Memorandum of Law at 5. And I conclude, as a general matter, that § 2465 may protect officers who effect seizures later shown to have been mistaken and focuses a court's inquiry on the "original justification" for the seizure itself, rather than on later evidentiary developments that might invalidate that seizure. With this background in mind, I move to the existence of reasonable cause in this case.

Reasonable cause has uniformly been held to be the equivalent of the more familiar "probable cause." The Supreme Court explained long ago that the two phrases are synonymous and that "[i]f there was a probable cause of seizure, there was a reasonable cause." *Stacey v. Emery*, 97 U.S. (7 Otto) 642, 646, 24 L.Ed. 1035 (1878). That proposition was earlier endorsed in this District, *see United States v. Twenty Six Diamond Rings*, 28 F.Cas. 288, 289 (D.Mass.1855), and subsequent opinions embrace the proposition that reasonable cause is substantially the same as probable cause. *See, e.g., All Monies*, 746 F.Supp. at 1444; *83 Sacks of Wool*, 147 F. at 748–49.

However, simply identifying the relevant standard as one of probable cause does not necessarily clarify matters in the context of this case, where three separate probable

cause determinations were made. First, a clerk magistrate found probable cause to search 255 Broadway. Then, after the government filed its forfeiture complaint, I found probable cause to issue a warrant and monition for the official seizure of the property. Finally, at the evidentiary hearing on the currency in the hutch, I found that the government had not established probable cause for the forfeiture of the currency. The operations of modern-day forfeiture law provide for a series of determinations of probable cause, each keyed to a particular stage of the civil forfeiture proceeding. The dispositive inquiry is to determine which assessment of probable cause previously made in this case, if any, should control the issuance of a certificate under § 2465.

■ As a general matter, in order to forfeit property under 21 U.S.C. § 881, the government must show a reasonable ground for belief that the defendant property was connected with illegal drug activity. *See United States v. Parcel of Land and Residence at 18 Oakwood Street,* 958 F.2d 1, 3 (1st Cir.1992). The First Circuit has recognized that this process proceeds step by step. Typically, the first phase involves the issuance of a warrant for seizure of the property, followed by the second phase of filing a complaint for forfeiture. The action concludes with the forfeiture trial itself. *See U.S. v. One Parcel of Real Property,* 921 F.2d 370, 373 (1st Cir. 1990). In the instant case, the procedure departed slightly from this model, because the formal warrant and monition was issued after the filing of the complaint. That departure aside, it is clear that the First Circuit has recognized, albeit without elaboration, a distinction between the probable cause determinations respectively at the seizure and forfeiture stages. *Cf. United States v. Parcel of Land & Residence at 28 Emery Street,* 914 F.2d 1, 4 n.

10 (1st Cir.1990) ("... the government seems to confuse probable cause to forfeit and probable cause to seize"). Not surprisingly, probable cause has a different evidentiary resonance at the various stages.

Judge Pettine touched on this quality when he observed that probable cause for a seizure warrant "empower[s] the government to seize property and hold it temporarily pending a full forfeiture hearing." *United States v. Property, Known as 6 Patricia Drive, Etc.,* 705 F.Supp. 710, 717 (D.R.I.1989), *vacated on other grounds, United States v. One Parcel of Real Property,* 921 F.2d 370 (1st Cir.1990).[4] Thus, in issuing the *ex parte* warrant and monition on June 1, 1989, I certified that the government had, upon the evidence available at that time, shown probable cause adequate to justify holding the property pending the dispositive evidentiary hearing. In other words, I found that the government had made an adequate preliminary showing that the property was connected to illegal activity and thus forfeitable.

At the trial itself, I applied the scheme of shifting burdens mandated by *28 Emery Street* for 21 U.S.C. § 881 forfeiture actions. Under *28 Emery Street,* the government must show probable cause to forfeit, based on " 'a reasonable ground for belief of guilt[,] supported by less than prima facie proof but more than mere suspicion' that the property is subject to forfeiture." 914 F.2d at 3 (citation omitted). Once the government makes this showing, the claimant must then prove by a preponderance that the property was not used in violation of the statute or that it was used without the owner's consent or knowledge. *Id.; see also United States v. Parcel of Land and Residence at 18 Oakwood Street,* 958 F.2d at 3. Thus, probable cause at the forfeiture trial is used to measure all of the evidence ultimately adduced for final dispo-

---

**4.** Judge Pettine in *6 Patricia Drive* was concerned with the distinction between the probable cause required for a warrant of seizure and the "more stringent" particularity requirement imposed on forfeiture complaints. *See* 705 F.Supp. at 717. Here, I focus on a different comparison—that between the probable cause embodied in a seizure warrant and the probable

cause determination required for actual forfeiture itself. I note in this connection that the claimant did not initially question the adequacy of the complaint with respect to particularity. That concern was raised in an untimely fashion and was, in any event, mooted by my findings at the evidentiary hearing. *See* Oral Reasons for Judgment at 1–2.

sition of a forfeiture action. It does not function to evaluate the necessarily preliminary and pretermitted showing pending trial. Evaluating the documents originally filed with the Complaint, as well as the adversarily developed evidence, I found at trial that the government had not met this primary burden of raising more than a mere suspicion that the defendant currency was connected to Jeffrey Soule's marijuana activity. *See* Oral Reasons for Judgment at 3–4. In particular, I noted the confusion about the amount and denominations of the currency actually seized in the hutch, *see* note 1 *supra,* and found the government's "net worth" evidence inadequate. In light of the plausible explanation for the way in which Mrs. Soule's household was run, I found no probable cause to forfeit the disputed currency, although I had earlier found adequate cause for the initial seizure of all the currency at the residence.

The government insists that the original finding of probable cause for the warrant and monition, bolstered by the evidence observed during the seizure, requires issuance of a certificate of reasonable cause. *See* Memorandum of Law in Support of Motion for Certificate of Reasonable Cause at 7–10. The claimant conversely argues that the ultimate disposition at the trial proved an absence of probable, and thus reasonable, cause. *See* Claimant's Memorandum of Law in Support of Opposition to Plaintiff's Motion for a Certificate of Reasonable Cause at 5. Determining probable cause at any stage in the forfeiture context necessarily requires a careful and discriminating analysis of the connection between the property and the crime as the evidence stands at the relevant time. This difficult process, which responds to accumulating evidence, should not be made more complex by the development of differing definitions of probable cause, and I do not intend to proliferate variable standards with which the government must comply. The standard fundamentally remains the same, although the evidence and the procedures for evaluating that evidence may be different. The evidence regarding probable cause to seize is presented for a preliminary determination, typically made in an *ex parte* context, as compared to the more fully developed evidence reviewed and procedures employed at trial when making the ultimate determination whether there is probable cause to forfeit. At trial, a court can review a broader range of submissions in an adversarial context and weigh the credibility of witnesses before making a final disposition.

▮▮▮ I hold that the certificate of reasonable cause here was adequately supported by the showing of probable cause at the warrant and monition stage. As discussed above, § 2465 operates to protect officials who, at the time of seizure, have reasonable cause to believe in the forfeitability of the property, but who later are proven wrong. For this protection to be meaningful, the official's actions should be evaluated on the basis of the evidence available at the time of seizure and with regard to whether that evidence established probable cause adequate for the issuance of a warrant for seizure. Demanding that the official subsequently show that he had probable cause to justify ultimate forfeiture, rather than seizure, would be tantamount to requiring that the government win, or at least meet its initial probable cause burden, at trial. Section 2465, however, plainly does not require vindication at trial; its first sentence begins with the words, "Upon entry of judgment for the claimant ..." In other words, the statute begins by assuming that the government is not vindicated at trial.

▮▮▮ A focus on the more preliminary showing of probable cause underlying the warrant also finds implicit support in case law. In discussing the showing necessary to warrant a certificate of reasonable cause, the Supreme Court observed that the relevant probable cause "means less than evidence which would justify a condemnation." *Averill v. Smith,* 84 U.S. (17 Wall.) 82, 92, 21 L.Ed. 613 (1873); *see also, 83 Sacks of Wool,* 147 F. at 749 (same). By focusing on the probable cause assessment that I was required to make *at trial,* the claimant in effect argues that the certificate can issue only in circumstances which would indeed "justify condemnation" or

forfeiture. As I have noted, however, § 2465 is geared to evaluation of choices made and actions taken at the time of seizure.

■ Stated differently, an official who obtains a warrant must be permitted to rely on that warrant in its execution if the warrant is to serve its function of facilitating valid forfeiture.[5] A court having been persuaded that probable cause for seizure exists, the official must be free to act on that showing as validating, and thus immunizing, his decision to seize. Thus, I find that the issuance of a warrant and monition for seizure generally is enough, standing alone, for a court later to certify reasonable cause under § 2465.

■ Of course, the existence of a warrant for seizure does not absolutely bar § 2465 inquiry in all cases, because the officer's reliance on the seizure warrant must be reasonable for him later to claim "reasonable cause."[6] In this regard, I adopt by analogy the approach established by the Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), where the Court held that the exclusionary rule does not apply to evidence obtained by officers acting in reasonable reliance on a search warrant later found to be invalid. The Court explained that, absent a showing that the magistrate issuing the warrant was other than neutral and detached, evidence seized pursuant to such a warrant would only be suppressed "if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S.Ct. at 3422. The same principles may be applied here to seizure warrants under scrutiny for purposes of

§ 2465. A certificate of reasonable cause should issue where the officer was authorized by a facially valid warrant for seizure, unless the claimant can show that the issuing court was not neutral and detached, that officers knowingly or recklessly falsified information in their affidavit, or that officers simply could not have maintained an objectively reasonable belief that probable cause for seizure existed.

In the instant case, the warrant and monition I issued establishes "reasonable cause" under § 2465 as a matter of law. I do not understand the claimant to suggest that I abdicated a disinterested role in issuing the warrant, or that Agent Lively's Affidavit and the other supporting papers contained knowing or reckless falsehoods, or even that the circumstances at the time of seizure precluded any objectively reasonable reliance on the warrant and monition as a memorialization of probable cause to seize. There is no allegation that, prior to or concurrent with seizure, facts came to light that would have undermined a reasonable faith in the adequacy of probable cause. The claimant, in other words, does not quarrel with the warrant and monition, but rather argues that failure later to prove probable cause to forfeit at trial means there was no reasonable cause for the seizure. Section 2465 is not determined by whether the government loses at trial, however. In these circumstances, I must issue the certificate of reasonable cause. Having determined at the seizure stage that the government had made an adequate showing of probable cause to permit holding the property pending trial, and having been offered no proof that impropriety or apparent unreasonableness infected that determination, I find that the government

5. I refer here, of course, to the warrant for seizure pending forfeiture. A simple search warrant, such as the one issued initially by a magistrate in this case, only authorizes seizure for evidentiary purposes. A warrant and monition for seizure, on the other hand, authorizes seizure for the ultimate purpose of forfeiture.

6. For this reason, I cannot adopt without qualification the view expressed by Judge Zobel, who has written in an unpublished decision, "[h]aving already found that there was probable cause

to issue the warrant for seizure, I have no choice but to find that there was 'reasonable cause' for the seizure within the meaning of 28 U.S.C. § 2465. *See Jarboe–Lackey Feedlots, Inc. v. United States,* 7 Cl.Ct. 329, 335–36 (1985)." *United States v. A Parcel of Land and Residence at 177 Ivanhoe Avenue,* No. 88–1640–Z (D.Mass. Nov. 17, 1989) (unpublished Memorandum of Decision). Judge Zobel's Memorandum of Decision is attached to United States' Response to Claimant's Petition for Attorney Fees, Docket # 110.

reasonably relied on that finding in effecting the seizure. Section 2465 requires no more.

### III. THE EQUAL ACCESS TO JUSTICE ACT

The claimant has moved for costs and attorney fees under the EAJA, which states in relevant part that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that other special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Under this subsection, a successful private party in a civil action against the United States is entitled to costs and fees where the government lacks substantial justification. Prior to entering into a full-blown analysis of how this statute applies to the claimant's case, I must first determine whether and, if so, how the issuance of a certificate of reasonable cause limits that analysis. The first phrase of § 2412(d)(1)(A) reads, "[e]xcept as otherwise specifically provided by statute." That opening phrase incorporates the limitations imposed by my grant of a certificate under 28 U.S.C. § 2465 into the EAJA for purposes of the claimant's motion.

In granting the certificate, I will immunize the seizing and prosecuting officials from personal liability and bar the claimant from seeking "costs." *See* 28 U.S.C. § 2465 (when certificate enters, "claimant shall not ... be entitled to costs"). The prohibition of an award of costs is absolute. The government argues that "costs" under § 2465 include attorney fees. *See* United States' Response to Claimant's Petition for Attorney Fees at 2–3. Thus, according to the government's argument, the claimant is not entitled to costs/attorney's fees under the EAJA, which is expressly limited by § 2465.

The government's argument goes several steps too far. I agree that the government may use the certificate as a shield to paying "costs" pursuant to an EAJA award. Section 2412(d)(1)(A) clearly incorporates limitations such as those imposed by a statutory grant under § 2465. Judge Zobel so found in *United States v. A Parcel of Land and Residence at 177 Ivanhoe Avenue,* No. 88–1640–Z (D.Mass. Nov. 17, 1989) (unpublished Memorandum of Decision). However, I reject the proposition that § 2465's "costs" embrace attorney fees. The statute speaks only in terms of "costs," and I am referred to no instance where a statutory award of costs under § 2465 has been interpreted to include lawyer's fees. *Cf. United States v. One 1965 Chevrolet Impala Convertible,* 475 F.2d 882, 886–87 n. 3 (6th Cir.1973) ("[W]e understand 'costs' under Section 2465 to include court costs and costs incident to the seizure."). I find that the certificate of reasonable cause under § 2465 does not bar the claimant from seeking attorney fees under the EAJA.

The more complex question involves the effect a certification of "reasonable cause" has on the government's "substantial justification" under the EAJA. To answer that question, I turn to a general review of the policies underlying the EAJA and recent First Circuit case law interpreting its operations in the forfeiture context.

The EAJA provides in relevant part that a party prevailing against the United States in a civil action shall be awarded costs and fees, "unless the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Congress thus struck a balance whereby the government would have to pay its opponent's costs and fees if its behavior fell below a certain threshold of justification. In probing the policies underlying this balance, the First Circuit has noted that, "[w]hile the EAJA is designed to encourage relatively impecunious private parties to challenge abusive or unreasonable governmental behavior by relieving such parties of the fear of incurring large litigation expenses, it does not allow the automatic shifting of fees." *United States v. One Parcel of Real Property*

*with Buildings, Appurtenances, and Improvements, Known as Plat 20, Lot 17, Great Harbor Neck, New Shoreham, Rhode Island*, 960 F.2d 200, 211 (1st Cir. 1992) (hereafter *Great Harbor Neck*) (quoting *Sierra Club v. Secretary of Army*, 820 F.2d 513, 516–17 (1st Cir.1987)). The Fourth Circuit has similarly explained that Congress's intent in establishing this scheme was "to penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigation position." *United States v. B & M Used Cars*, 860 F.2d 121, 124 (4th Cir. 1988). I thus approach the EAJA with an eye to its primary purpose of shifting the burden of *unreasonable* government behavior while simultaneously affording the government the latitude it needs in pursuing apparently legitimate cases.

 The substantial justification standard that lies at the heart of § 2412(d)(1)(A) has been carefully parsed by the Supreme Court as follows:

> ... as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The First Circuit has adopted this general test of reasonableness in making assessments of substantial justification. *See Great Harbor Neck*, 960 F.2d at 208 (government must show reasonable basis for facts alleged and for legal theories advanced and that former supported the latter). From this perspective, it is clear that the government's loss at a trial by no means signifies a lack of adequate justification. "Thus, in a forfeiture case, the fact that the government's attempt at confiscation misfired will not raise a presumption

that its position lacked substantial justification." *Id.* at 208. Rather, the government's conduct must be judged from the vantage point of the reasonable person, and, as the First Circuit notes, more specifically in terms of the evidentiary burden the United States faces under the statute on which it purports to rely. *See id.* In the context of civil forfeiture, the assessment of substantial justification must be seasoned by the "low" threshold the government must meet to make out a prima facie case—probable cause that the property was used in violation of the forfeiture statute. *Id.*

 A crucial element of the evaluation of substantial justification is that it is not temporally limited to isolated government choices, but must rather encompass both the government's "agency position" and its subsequent "litigation position." *See id.* The "agency position" is the government's underlying decision to initiate a forfeiture proceeding, and the "litigation position" involves the manner in which the government implemented its decision to go forward with the forfeiture suit. *Id.* at 209. In this sense, analysis under the EAJA is necessarily more broad-based than that under § 2465, which scrutinizes government conduct at the time of seizure only. Thus, whatever the semantic distinction to be made between reasonable cause and substantial justification, I note that the claimant's EAJA claim requires that I look to a broader body of evidence and a longer period of time than was necessary for the § 2465 evaluation. And, while the issuance of a certificate of reasonable cause may influence my sense of the government's justification in originally seizing Claire Soule's currency, the certificate is not dispositive on the question whether the government was justified throughout the entire forfeiture process. *See United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1517 (9th Cir.1992) ("probable cause for seizure does not automatically equate with substantial justification" where government's conduct after seizure is unreasonable).

 I begin with the United States' agency position—its decision to initiate a

forfeiture action against the currency in the hutch. Validating the government's agency position in *Great Harbor Neck*, the First Circuit noted that "the government's initial decision to seize the Beane estate was altogether warranted." *Id.* Thus, focusing on the government's decision to initiate forfeiture essentially means analyzing the decision to seize the property for purposes of forfeiture—an analysis quite close to my § 2465 focus on reasonable cause at the time of seizure. Consequently, I recognize that the certificate of reasonable cause, which is in turn dependent on the existence of probable cause embodied in the warrant and monition, tends to indicate that the government acted reasonably at the outset of the forfeiture process.

 In this connection, I note that the Fourth Circuit reversed a District Court's award of fees to a claimant where the lower court had issued a warrant for seizure. The Fourth Circuit observed that, "[i]t is difficult to understand how the district court could later find the government's position lacking in substantial justification when it had previously acknowledged that the government had satisfied the initial evidentiary burden of a full-scale forfeiture trial." *B & M Used Cars*, 860 F.2d at 124. The *B & M Used Cars* panel is understood to have "analogized this pre-seizure finding [in the warrant for seizure] to satisfaction of the initial evidentiary burden in a full-scale forfeiture trial." *See U.S. v. One 1985 Chevrolet Corvette*, 914 F.2d 804, 809 (6th Cir.1990) (interpreting *B & M Used Cars*). In *B & M Used Cars*, there had been an adversarial hearing before the warrant issued. By contrast, here there was no adversarial hearing. Rather, I issued the warrant and monition *ex parte*. Nonetheless, *B & M Used Cars* supports the proposition that a valid warrant for seizure embodying a district judge's finding of probable cause bolsters the government's case for substantial justification. I conclude that a warrant may wholly justify

the agency position [7] and gives substantial color to the litigation position which follows.

I do not predicate my findings with respect to the United States' agency position solely on the presence of a warrant, however. In *Great Harbor Neck*, a magistrate-judge had found probable cause to issue a seizure warrant, and the Court recognized that "probable cause is often the functional equivalent of substantial justification." Nonetheless, the Court still engaged in a review of the actual evidence submitted. *Id.* at 203, 206 n. 2, 209. And, indeed, another court in this Circuit has found that the government was not substantially justified in bringing a forfeiture action, despite earlier findings of probable cause by a magistrate and then a district judge. *See U.S. v. One Rural Lot*, 770 F.Supp. 66, 69–70 (D.P.R.1991). Thus, I look more broadly to the evidence at the time the government seized the property and filed its complaint for forfeiture.

The government submits, and the claimant does not deny, the following facts surrounding the event of seizure. Claire Soule appeared to be at home when 64 bales of marijuana were delivered into a barn attached to the house. The searching officers arrested Jeffrey Soule and a William Solon. In addition to the 64 bales of marijuana, the officers found 468.1 grams of cocaine, $874,510.00 in a closet, $5,310.00 in a basement safe, $26,500.00 in a gym bag in a bedroom, and the disputed amount of currency in envelopes in the hutch. *See* Affidavit of Allen Lively at ¶ 12, Ex. B, Complaint. Apparently, when the agents questioned Claire Soule about the source of the money, she first responded that she had received it as an inheritance, later described it as savings for a swimming pool, and then claimed it represented a number of gifts. *See* United States' Response to Claimant's Petition for Attorney Fees at 7. Whichever figure I choose to accept as the

---

7. This assumes that the evidence submitted in support of the warrant is all the material evidence known at the time the warrant is sought and no exculpatory facts are developed in the warrant's execution. To the degree that the

judicial officer issuing the warrant is not made aware of material information at the time of seizure, the value of the warrant to demonstrate substantial justification is diminished.

amount actually found in the hutch, *see* note 1 *supra,*—$4,490.00, $2,911.00, $6,000.00, or $2,450.00—that amount is an unusually large sum of cash to have been kept in an unsecured place, especially in light of Claire Soule's ownership of a home safe in the basement and rental of a safety deposit box. *See United States v. $2,500 in U.S. Currency,* 689 F.2d 10, 16 (2d Cir.1982), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984) (in assessing probable cause for forfeiture, trial court properly considered $2,500 in cash as "substantially greater than is commonly kept in residential premises by law abiding wage earners"). Viewed in their totality, these facts substantially justified the government in filing a forfeiture complaint and obtaining a warrant to take the currency into official custody. The various lots of currency in conjunction with the large quantity of narcotics would satisfy a reasonable person that the money was likely to be forfeitable.

The government's litigation position involves its process of following up on the decision to seize and pursuing forfeiture through the trial stage. The claimant argues that the government adopted a "trial at all costs" stance and that it never wavered from this inflexible attitude during the course of discovery. *See* Claimant Claire J. Soule's Supplemental Memorandum of Law in Support of her Request for Costs and Attorney's Fees Pursuant to 28 U.S.C. § 2412 at 8–9. However, the claimant points to no intervening evidence that might have given the government pause over whether to continue onward with the case. No newly unearthed information, for instance, substantiated Claire Soule's conflicting accounts of the source of the money or disproved the money's apparent connection to the wealth of drug activity that took place in the house. In fact, all that was added to the government's case after actual seizure was the deposition transcript of an IRS agent calculating the claimant's net worth, and the claimant's own deposition testimony. To be sure, the government's goal—to take from a working grandmother who was also caring for her grandchild when the search took place her

residence and a relatively small amount of the large quantity of cash seized—was not a particularly sympathetic one. But it was one which had support in the law and one that was not unreasonable to pursue. Having found that the government's decision to initiate the proceedings was substantially justified, and having been pointed to no factor that undermined that preliminary decision, I find the government's pursuit of its case to trial was reasonable. *See U.S. v. One 1985 Chevrolet Corvette,* 914 F.2d at 809 ("The government's position in initiating the forfeiture proceeding was substantially justified, and nothing that occurred during trial required the government to abandon the proceeding"). As to both the government's agency and litigation positions, the claimant contends that my ultimate finding of no probable cause to forfeit proves the lack of substantial justification. *See id.* at 7–8, 8–10. She notes that I characterized the government's evidence as raising no more than a mere suspicion, discerned considerable confusion surrounding the seizure of the cash in the hutch, and described the government's evidence of her net worth as "cut rate." *See id.* at 9.

To be sure, the First Circuit has suggested that a finding of probable cause strongly suggests substantial justification, and that the two standards are often "functional equivalent[s]." *See Great Harbor Neck,* 960 F.2d at 208, 209. However, that recognition does not imply that an ultimate and *dispositive* finding of no probable cause after a three day evidentiary hearing automatically proves an absence of substantial justification. As I have explained, in the forfeiture context, a probable cause determination will involve varying amounts and types of, and perspectives on, the evidence depending on the stage of the proceedings. In this case, the government had probable cause at the seizure stage to believe that the hutch money was related to illegal activity. However, in the adversarial setting of trial, I assessed the circumstances of the search and the credibility of the witnesses, particularly with regard to Soule's explanation of the source of her money, and found

that the total picture was suspicious but inadequate to satisfy the government's trial burden. *See* Oral Reasons For Judgment at 3. Thus, what once appeared to be a sound case for the government—and indeed a legitimate instance of probable cause—was eroded during three days of receiving evidence. Given the dependence of the government's case for probable cause on credibility determinations as to which reasonable persons could differ, it would be inconsistent with the policies of the EAJA to equate probable cause with a conclusion of no substantial justification.

The Sixth Circuit has noted that "the stage at which the proceedings were resolved" is relevant to the EAJA analysis. *See United States v. Real Property Located at 2323 Charms Road*, 946 F.2d 437, 440 (6th Cir.1991); *One 1985 Chevrolet Corvette*, 914 F.2d at 809 (same); *see also One Rural Lot*, 770 F.Supp. at 70 ("disposition at an early stage of the proceedings tends to show the weakness of the government's position" under the EAJA). That final resolution of the government's case did not occur until after a full evidentiary and adversarial testing at trial suggests that the government was not overstepping the bounds of reasonableness.

Finally, I am persuaded in my judgment by the fundamental policies that underlie the EAJA. As noted earlier, the statute is designed to permit and encourage private citizens to challenge "unreasonable" or "abusive" government conduct. *See Great Harbor Neck*, 960 F.2d at 211. There is no sense in this case that the government acted unfairly, arbitrarily, abusively, or unreasonably in instituting and bringing this action to trial. The United States did not, for instance, conduct a poor investigation of the owner's claim and then unreasonably delay bringing its case to trial, *see United States v. $12,248 U.S. Currency*, 957 F.2d at 1517, or seize over $100,-000 despite probable cause for less than 13 percent of that amount, *see United States v. Eighty–Eight (88) Designated Accounts Containing Monies Traceable to Exchanges for Controlled Substances*, 786 F.Supp. 1578, 1582–83 (S.D.Fla.1992).

Rather, the government merely lost at trial. Without more, that loss does not occasion an award of attorney fees under the EAJA. I find that the government's initial seizure and subsequent prosecution of its case were substantially justified within the meaning of the EAJA, and accordingly deny the claimant's motion.

## IV. CONCLUSION

For the foregoing reasons, I grant the United States' motion for a certificate of reasonable cause both as to the claimant's real property and currency, and I deny the claimant's motion for fees and costs.