USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-1776 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. PARCELS OF PROPERTY, WITH BUILDING APPURTENANCES AND IMPROVEMENTS LOCATED AT 255 BROADWAY, HANOVER, Defendant, Appellee, ____________________ CLAIRE J. SOULE, Claimant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Selya and Stahl, Circuit Judges, ______________ and Fuste,* District Judge. ______________ ____________________ Richard J. Inglis, with whom Richard A. Gargiulo and Gargiulo, __________________ ____________________ _________ Rudnick & Gargiulo, were on brief for appellant. __________________ Laurie J. Sartorio, Assistant United States Attorney with whom A. ___________________ __ John Pappalardo, United States Attorney was on brief for appellee. _______________ ____________________ November 24, 1993 ____________________ *Of the District Court of Puerto Rico, sitting by designation. STAHL, Circuit Judge. In this appeal, claimant _____________ Claire Soule seeks costs and attorneys' fees incurred in recovering $2450 in cash which was seized in a drug raid on her home. We affirm the denial of costs and fees, though we do so on grounds different from those relied upon by the district court. I. I. __ FACTUAL BACKGROUND AND PRIOR PROCEEDINGS1 FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ________________________________________ During July of 1988, United States Drug Enforcement Administration (DEA) agents received information that 1500 pounds of marijuana were to be delivered to Jeffrey Soule at 255 Broadway in Hanover, Massachusetts. A local police check revealed that a John Jeffrey Soule resided in nearby Carver, Massachusetts, but that his mother lived at 255 Broadway in Hanover. On the evening of July 23, 1988, after local police and DEA agents observed the delivery of marijuana to 255 Broadway, search warrants were obtained for the premises. At 4:30 a.m. the following morning, local and federal officials executed the warrants. The search revealed, inter alia: (1) _____ ____ approximately 1600 pounds of marijuana in a barn adjacent to the house; (2) $874,510 in cash found in a box in a closet on the first floor of the house; (3) 461.8 grams of cocaine, ____________________ 1. For a more detailed version of the factual background in this case, see United States v. 255 Broadway, 795 F. Supp. ___ _____________ ____________ 1225 (D. Mass. 1992). -2- 2 along with $5310 in cash in a basement safe; (4) $26,500 in cash found in a gym bag beside the bed in which John Jeffrey Soule was sleeping; (5) $3171 in cash found in a leather travel bag on top of a hutch in the dining room; and (6) a disputed amount of cash between $2450 and $4490 contained in five envelopes found inside the dining room hutch. Only this last item is at issue in this appeal. On April 17, 1989, John Jeffrey Soule pleaded guilty to charges of conspiracy to possess marijuana and possession of marijuana with intent to distribute. On May 25, 1989, less than one month later, the government filed a complaint for forfeiture in rem of, inter alia, the cash _____ ____ proceeds found in the search of Claire Soule's home.2 On June 1, 1989, at the government's request, the district court issued a warrant and monition for, inter alia, all of the _____ ____ ____________________ 2. 21 U.S.C. 881(a)(6) states that the following shall be subject to forfeiture: All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without knowledge or consent of that owner. -3- 3 seized cash.3 Claire Soule responded on June 14, 1989, by filing a notice of claim for the money found in the envelopes in the dining room hutch. On September 6, 1989, a default judgment of forfeiture was entered against the lots of $874,510, $26,500 and $5310.4 On February 13, 1991, the district court held a hearing at which the government was asked to show probable cause for the forfeiture of the money found in the five envelopes inside the hutch. At the conclusion of the hearing, the district court found that the government had failed to show probable cause for forfeiture of that money, and awarded $2450 to Claire Soule. The government moved immediately for a certificate of reasonable cause pursuant to 28 U.S.C. 2465, so as not to be liable for costs.5 Claire Soule opposed the motion for a ____________________ 3. 21 U.S.C. 881(b) provides, in relevant part, that "[a]ny property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims." The warrant and monition in this case was issued pursuant to these Supplemental Rules. See, e.g., United States v. ___ ____ _______________ Approximately Two Thousand, Five Hundred Thirty-Eight Point _____________________________________________________________ Eighty-Five Shares of Stock, 988 F.2d 1281, 1283-84 (1st Cir. ___________________________ 1993). 4. Though the appellate record is not entirely clear, the $3171 found in the leather bag appears to have been subject to administrative, rather than judicial, forfeiture. 5. 28 U.S.C. 2465 provides: Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his -4- 4 certificate of reasonable cause and sought attorneys' fees under the Equal Access to Justice Act (hereinafter EAJA), 28 U.S.C. 2412,6 for expenses incurred in recovering the $2450. The district court granted the government's request for the certificate of reasonable cause and denied claimant's request for attorneys' fees. II. II. ___ DISCUSSION DISCUSSION __________ We begin by noting that "we are free to affirm a district court's decision on any ground supported in the record even if the issue was not pleaded, tried or otherwise referred to in the proceedings below." De Casenave v. United ___________ ______ States, 991 F.2d 11, 12 n.2 (1st Cir. 1993) (citations and ______ internal quotations omitted). In this case, although the district court misapplied the statutory burden-shifting scheme applicable to federal forfeiture actions, we nonetheless affirm its denial of costs and attorneys' fees. ____________________ agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution. 6. 28 U.S.C. 2412(d)(1)(A) provides, in relevant part, that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." -5- 5 A. The Statutory Scheme: Probable Cause to Institute A. The Statutory Scheme: Probable Cause to Institute _____________________________________________________________ Forfeiture Proceedings Forfeiture Proceedings ______________________ In a forfeiture action brought under 21 U.S.C. 881, the allocation of the parties' burdens is provided by 19 U.S.C. 1615. See 21 U.S.C. 881(d); United States v. 1933 ___ _____________ ____ Commonwealth Ave., 913 F.2d 1, 3 (1st Cir. 1990). Section _________________ 1615 states, in relevant part, that the "the burden of proof shall be upon the defendant: Provided, That probable cause ________ shall be first shown for the institution of such suit or ___ ___ ___________ __ ____ ____ __ action, to be judged by the court" (second emphasis ______ supplied). In other words, under section 1615, the government has a preliminary burden to show that it had probable cause to institute the forfeiture proceeding. See, e.g., United _____________ ___ ____ ______ States v. 1988 Oldsmobile Cutlass Supreme, 983 F.2d 670, 675 ______ _______________________________ (5th Cir. 1993) (affirming district court's finding that government had "probable cause to institute a forfeiture __ _________ action") (emphasis supplied); United States v. One Hundred ______________ ___________ Forty-Nine Thousand Four Hundred Forty-Two and 43/100 _____________________________________________________________ Dollars, 965 F.2d 868, 876 (10th Cir. 1992) ("In forfeiture _______ proceedings, the government bears the initial burden to show probable cause for the institution of the forfeiture ___ ________________ action.") (emphasis supplied); United States v. 526 Liscum _____________ __________ Drive, 866 F.2d 213, 216 (6th Cir. 1989) ("[O]nce the _____ government has met its burden of showing probable cause to __ institute the forfeiture action, the burden then shifts to _________ -6- 6 the claimant . . . .") (emphasis supplied); United States v. _____________ One 1976 Ford F-150 Pick-Up, 769 F.2d 525, 526 (8th Cir. _____________________________ 1985) ("[T]he government has the initial burden of showing probable cause for the institution of the forfeiture suit.") ___ ___ ___________ (citations and internal quotations omitted and emphasis supplied). Once the government has made this showing, the burden then shifts to the claimant to show by a preponderance of the evidence that the property at issue is not subject to forfeiture. See, e.g., United States v. 18 Oakwood St., 958 ___ ____ ______________ ______________ F.2d 1, 3 (1st Cir. 1992). Here, the district court did not assess whether the government had probable cause to institute the proceedings. __ _________ Rather, it improperly focused its inquiry on whether probable cause existed on the date of the probable cause hearing itself, and concluded that no probable cause existed at that time. See United States v. 255 Broadway, 795 F. Supp. 1225, ___ _____________ ____________ 1231-32 (D. Mass. 1992). The record before us makes clear, however, that on May 25, 1989, the date of the institution of ___________ forfeiture proceedings, the government had probable cause to believe that the funds at issue were forfeitable. B. The Existence of Probable Cause in this Case B. The Existence of Probable Cause in this Case ________________________________________________ "Probable cause to forfeit requires only a `reasonable ground for belief of guilt[,] supported by less than prima facie proof but more than mere suspicion' that the property is subject to forfeiture." United States v. 28 ______________ __ -7- 7 Emery St., 914 F.2d 1, 3 (1st Cir. 1990) (quoting United __________ ______ States v. $250,000 in United States Currency, 808 F.2d 895, ______ ___________________________________ 897 (1st Cir. 1987)). In other words, the government has a "relatively light burden of showing probable cause" to believe that the subject property is forfeitable. United ______ States v. Plat 20, Lot 17, Great Harbor Neck, 960 F.2d 200, ______ ___________________________________ 205 (1st Cir. 1992) (hereinafter Great Harbor Neck). ____________________ Moreover, "[b]ecause there are so many variables in the probable cause equation, probable cause findings are not invariably bound by precedent." United States v. Maguire, _____________ _______ 918 F.2d 254, 258 (1st Cir. 1990) (citations and internal quotations omitted), cert. denied, 111 S. Ct. 1421, 2861 _____ ______ (1991). Rather, in each case, we must consider "the totality of the circumstances to evaluate the government's demonstration" of probable cause. Id. In doing so, "we ___ review each piece of evidence only to determine whether it is probative, not whether it establishes probable cause standing alone." United States v. $67,220.00 in United States ______________ ______________________________ Currency, 957 F.2d 280, 285 (6th Cir. 1992). ________ In addition, we note that in order to show probable cause to forfeit in this particular case, the government was not required to show that the money at issue was traceable to the very contraband found on the night of the search. Rather, the district court held, and Claire Soule does not dispute on appeal, that the money at issue would be -8- 8 forfeitable if found to be the proceeds of any of John ___ Jeffrey Soule's drug transactions. See, e.g., 1933 ___ ____ ____ Commonwealth Ave., 913 F.2d at 3 (stating that the government _________________ is not "require[d to] link[] the property to a particular transaction"). Finally, while we accept the district court's underlying factual findings unless they are clearly erroneous, Maguire, 918 F.2d at 257, we note that "[t]he _______ existence of probable cause is a question of law, and as such, is subject to plenary review." United States v. One _____________ ___ 1986 Chevrolet Van, 927 F.2d 39, 42 (1st Cir. 1991). Cf. __________________ ___ United States v. Holder, 990 F.2d 1327, 1328 (D.C. Cir. 1993) _____________ ______ ("We review de novo the district court's legal conclusion __ ____ that probable cause supported the arrest, but we examine the court's findings of fact only for clear error."); United ______ States v. Greene, 783 F.2d 1364, 13 (9th Cir.) ("The ultimate ______ ______ conclusion of presence or absence of probable cause is a mixed question of law and fact. The underlying facts as found by the district court are to be accepted unless clearly erroneous. The court's ultimate conclusion, however, is reviewed de novo.") (citations omitted), cert. denied, 476 __ ____ _____ ______ U.S. 1185 (1986). Applying these standards, we find the record replete with probative evidence which supports a finding that, on May 25, 1989, the government had probable cause to -9- 9 institute forfeiture proceedings against the money at issue. During the search of 255 Broadway, Claire Soule was questioned by a DEA agent about the source of the cash at issue in this appeal. While the district court did not determine precisely what Claire Soule's answers were that night, it nonetheless did find those answers to be "inconsistent, indeed suspicious." This finding is fully supported by the record.7 Moreover, there were 1600 pounds ____________________ 7. Agent Lively of the DEA testified as follows with regard to Claire Soule's answers: I had a concern as to what this money [in the envelopes] was and I wanted to talk to Mrs. Soule concerning what it was. She agreed to talk to us about the money. And myself and Agent Hayes-- Lieutenant Hayes--talked with her. Lieutenant Hayes began the conversation with her by asking her about what the money was. And she said it was money that was for a pool, which was fairly obvious from the notation on the envelope. She was asked how much money it was and she responded it was about $10,000. She was asked what the source of the monies were. And her first response was it was money from an inheritance. And I believe I asked her who was the inheritance from, what was the source of the inheritance, which person. Her words were, in effect, what difference does it that make? And I told her, I said, "I'm trying to determine if this is your money or this is somebody else's money or where this money came from. If you can tell me what the source of the inheritance is or if you have some probate document that shows you receiving this kind of money, you know, help me out." She said, "Well, I got the money in cash." And my response was you usually don't get that kind of money from an estate in cash, it comes in the form of checks. Her response was, "Well, I also got monies from -- yes, for my birthday and other occasions." -10- 10 of marijuana in the barn adjacent to Claire Soule's house, a sizeable amount of cocaine in a safe in the basement, and over $900,000 in cash in the house. Not only was there cash near the hutch in which the funds at issue were found, there was also a bag containing $3171 found directly on top of the hutch. Suspicious and contradictory answers in the presence of the large quantities of cash and drugs uncovered in this search are certainly probative in determining the existence of probable cause. Equally important is the fact that Claire Soule made no offers of proof, either before or after the government's initiation of forfeiture proceedings, to substantiate her allegations that the cash came from legitimate sources. Thus, even if Claire Soule's responses had not been adjudged "suspicious," her denials alone, unaccompanied by offers of proof, were insufficient to rebut a showing of probable cause. See, e.g., One Hundred Forty- ___ ____ __________________ Nine Thousand Four Hundred Forty-Two and 43/100 Dollars, 965 ________________________________________________________ F.2d at 878 ("We conclude that claimants' proffer of three `possible' innocent sources of income does not vitiate the government's showing of a strong probability that the source of the money is in fact illegal drug activity."); 1933 ____ Commonwealth Ave., 913 F.2d at 4 (finding "general denials" _________________ insufficient to overcome government's showing of probable cause). -11- 11 Finally, it is undisputed that Claire Soule's keys to a safe deposit box were seized during the drug raid and that she surreptitiously went to the bank just days after the search of her home and had the box drilled open by bank employees so she could empty it before it could be searched. The government was aware of this act at the time that it instituted forfeiture proceedings. Again, while such behavior is far from determinative, we believe it relevant to the probable cause determination. Without making any credibility determinations beyond those made by the district court, and while noting that none of these factors standing alone necessarily establishes probable cause, we find that these circumstances taken as a whole support a finding that, on May 25, 1989, the date of the initiation of forfeiture proceedings, the government had probable cause to believe that all of the money seized from 255 Broadway, including the money found in the envelopes inside the hutch, was subject to forfeiture. C. Adversarial Evidence and the Probable Cause Hearing C. Adversarial Evidence and the Probable Cause Hearing _______________________________________________________ The government did commit serious errors in handling the cash found in and around Claire Soule's dining room hutch. For example, initial notations by a DEA agent, made on the envelopes themselves on the night of the raid, indicated that the envelopes contained the following: one $10 bill, one-hundred and fourteen $20 bills, eighteen $50 -12- 12 bills and eight $100 bills for a total of $3990. About three days later, forms filed by the same agent showed startlingly different denominations. These later forms stated that the envelopes seized from the hutch contained one $10 bill, sixty-four $20 bills, sixty-two $50 bills and one $100 bill for a total of $4490. In addition, one report filed by a local police officer who participated in the search stated that the amount of cash found in the envelopes combined with the cash found in the leather bag on top of the ________ ____ hutch totaled $2911. At the February 13, 1991, probable cause hearing, Claire Soule's counsel focused almost exclusively on these various deficiencies in the government's handling and accounting of the money found in the envelopes. While the government's errors as to the amount at issue were ______ significant, it is the source of the funds in this case which ______ would have rendered them forfeitable. Thus, the government's handling and accounting errors did nothing to diminish probable cause. In other words, despite the government's errors, there remained ample reason to believe that the source of the funds rendered them forfeitable. Cf. 18 ______ ___ __ Oakwood St., 958 F.2d at 5 ("[T]he [government's] affidavit ___________ asserts that $50,000 was seized during a particular drug- related arrest at 18 Oakwood Street, whereas in fact, as the government concedes, only $611.00 was seized. While the -13- 13 monetary discrepancy is large, [claimant] made no showing that it was of any consequence to the establishment of probable cause."). In sum, the district court first erred in fixing the date of the probable cause hearing as the date at which the government must demonstrate probable cause. Rather, as noted above, in order to meet its preliminary burden at trial, the government need only show that it had probable cause to institute forfeiture proceedings. Second, the __ _________ district court erred in ruling that the government's errors in handling and accounting for the money at issue vitiated the existence of probable cause. D. The Certificate of Reasonable Cause and the Denial of D. The Certificate of Reasonable Cause and the Denial of _____________________________________________________________ Attorneys' Fees Attorneys' Fees _______________ Despite these errors below, however, we nonetheless affirm the district court's denial of costs and fees. Claire Soule's argument that the district court's issuance of the certificate of reasonable cause was error is based solely on the ground that the district court found no probable cause at the pre-trial hearing.8 In view of our ____________________ 8. We expressly decline to reach the question of whether we have appellate jurisdiction to review the granting of a certificate of reasonable cause. See United States v. ___ ______________ Abatoir Place, 106 U.S. 160, 162 (1882) (holding that the _____________ denial of a certificate of reasonable cause is not ______ appealable); United States v. One Thousand Six Hundred Thirty _____________ _______________________________ Dollars, 922 F.2d 740, 741 (11th Cir. 1991) (applying Abatoir _______ _______ in holding that the granting of a certificate of reasonable ________ cause is unappealable). Rather, "it is settled that an appellate court may forego the resolution of a jurisdictional -14- 14 determination that there was probable cause to institute the instant proceedings, this argument is of no avail.9 Accordingly, Claire Soule's request for costs under 28 U.S.C. 2465 fails. Claire Soule also seeks to recover attorneys' fees under the EAJA based both upon the government's "agency position", i.e., its decision to institute proceedings, and its "litigation position", i.e., its persistence in seeking forfeiture well after its May 25, 1989, initiation of proceedings. See, e.g., Great Harbor Neck, 960 F.2d at 208- ___ ____ __________________ 09 (differentiating, for EAJA purposes, between government's "agency position," and its "litigation position"). Like her "certificate of reasonable cause" argument, Claire Soule's argument that the government's agency position was not "substantially justified" for EAJA purposes hinges entirely on the district court's finding that the government failed to meet its initial burden of showing ____________________ question if, as is true here, the appeal is uncomplicated and easily resolved in favor of the party to whose benefit the jurisdictional question would redound." United States v. _____________ Connell, No. 93-1237, slip op. at 4 n.3 (1st Cir. October 6, _______ 1993). 9. Moreover, the Supreme Court has stated that reasonable cause is essentially synonymous with probable cause. See ___ Stacey v. Emery, 97 U.S. 642, 646 (1878) ("If there was a ______ _____ probable cause of seizure, there was a reasonable cause."). Thus, our determination that the government did, in fact, possess probable cause to institute the forfeiture proceedings would suffice to show that the government also possessed reasonable cause, and that the issuance of the certificate of reasonable cause was not in error. -15- 15 probable cause. Our conclusion to the contrary similarly forecloses this arm of her EAJA argument. Cf. United States ___ _____________ v. One 1985 Chevrolet Corvette, 914 F.2d 804, 809 (6th Cir. ____________________________ 1990) (finding that "when the government established probable cause in the forfeiture proceeding, its position was substantially justified" for EAJA purposes). To the extent that Claire Soule seeks attorneys' fees based on the government's litigation position, the district court specifically found that the government's persistence in seeking forfeiture was fully justified. See ___ 255 Broadway, 795 F. Supp. at 1237 ("[T]he claimant points to ____________ no intervening evidence that might have given the government pause over whether to continue onward with the case. No newly unearthed information, for instance, substantiated Claire Soule's conflicting accounts of the source of the money or disproved the money's apparent connection to the wealth of drug activity that took place in the house."). This finding is fully supported by the record. Accordingly, we decline to overturn the district court's denial of attorneys' fees under the EAJA. Finally, we note that the government does not cross-appeal in this case. As a result, it is foreclosed from further pursuit of its forfeiture claim, despite our ruling that it met its initial burden of demonstrating -16- 16 probable cause to institute a forfeiture proceeding against the money in question. III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, the order of the district court denying costs and attorneys' fees to Claire Soule is Affirmed. No costs. Affirmed. No costs. _________ _________ -17- 17