**UNITED STATES of America, Plaintiff,**

v.

**ELEVEN VEHICLES, et al., Defendants.**

**Civil Action No. 91–6779.**

United States District Court,
E.D. Pennsylvania.

Aug. 30, 1996.

As Amended Sept. 9, 1996.

Michael L. Levy, Pamela Foa, Assistant U.S. Attorney, Michael M. Baylson, Sonia C. Jaipaul, Robert Goldman, Ronald H. Levine, U.S. Attorney's Office, Philadelphia, PA, for U.S.

Charles H. Ivy, Scoggins, Ivy & Goodman, P.C., Atlanta, GA, for Robert Clyde Ivy, Irene Ivy.

Robert Clyde Ivy, Lancaster, PA, pro se.

Wayne K. Radcliffe, Lancaster, PA, pro se.

Marilyn J. Gelb, Philadelphia, PA, for Wayne K. Radcliffe.

Bruce A. Franzel, Philadelphia, PA, for Terrance.P. Faulds.

Terrance P. Faulds, Holtwood, PA, pro se.

Irene Ivy, Lancaster, PA, pro se.

Fred D. Furman, Kleinbard, Bell & Brecker, Philadelphia, PA, for Kleinbard, Bell & Brecker.

James H. Foster, Mellon Bank, N.A., Harrisburg, PA, for Mellon Bank, N.A.

John H. Whitmoyer, Henry & Beaver, Lebanon, PA, for Lebanon Valley National Bank.

Mark E. Cedrone, Carroll & Cedrone, Philadelphia, PA, for Gerald Schuler.

Elaine K. Radcliffe, Lancaster, PA, pro se.

Michelle E. Radcliffe, Lancaster, PA, pro se.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This case comes before the Court on the motion of the Government for a certificate of reasonable cause pursuant to 28 U.S.C. § 2465, and the motion of claimants Robert Clyde Ivy and Irene Ivy for attorney's fees, expenses, and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the reasons that follow, the Government's motion for a certificate of reasonable cause is granted. Claimants' motion for attorney's fees, expenses, and costs is granted in part and denied in part.

## I. BACKGROUND

The underlying case involves the forfeiture of claimants' property as a result of Robert Clyde Ivy's alleged involvement with money laundering activities. The alleged criminal conduct is the subject of a criminal prosecution before another judge of this court, *United States v. Armaments of South Africa, Ltd.*, Crim.Action No. 91–602 (E.D.Pa.). *See also United States v. Jasin*, Crim.Action No. 91–602–8, 1993 WL 259436, at *1–4 (E.D.Pa. July 7, 1993) (DuBois, J.). The Government

instituted the forfeiture proceeding under 18 U.S.C. § 981(a)(1)(A) and § 981(a)(1)(C) on October 30, 1991, the day before Robert Clyde Ivy was indicted for money laundering activities and wire fraud.

Claimants moved for summary judgment, asserting that the Government lacked probable cause to establish that the subject properties were the proceeds of the predicate crimes, that the properties owned jointly or solely by Irene Ivy could not be forfeited due to her status as an innocent owner, and that retroactive application of the 1988 amendments to 18 U.S.C. § 981 violated the ex post facto clause. On October 21, 1993, this Court found that the Government had failed to establish probable cause to forfeit certain defendant properties, approximately 40%–45% of the original total seized, under 18 U.S.C. § 981(a)(1)(C) and ordered those properties released. *United States v. Eleven Vehicles*, 836 F.Supp. 1147 (E.D.Pa.1993) [hereinafter *Eleven Vehicles I* ]. As to the remaining properties, the Court found that probable cause to forfeit existed under 18 U.S.C. § 981(a)(1)(A). The Court also concluded that the existence of a genuine issue of material fact as to Irene Ivy's lack of knowledge of the illicit activities alleged in the complaint precluded the granting of summary judgment in her favor on the innocent owner defense. Finally, the Court found that application of the forfeiture statute to properties acquired prior to enactment of the 1988 amendments did not violate the ex post facto clause.

On September 5, 1995, the Court granted in part claimants' second motion for summary judgment, ordering the release of certain of the remaining properties held by the Government, another 40%–45% of the original properties seized. The Order was predicated on a finding that the Government's reliance on the 1988 amendments to the federal money laundering statute, 18 U.S.C. § 981(a)(1)(A), for the forfeiture of properties which were acquired prior to the effective date of the amendments, constituted an impermissible retroactive application of law. *See United States v. Eleven Vehicles*, 898 F.Supp. 1143, 1155 (E.D.Pa.1995) [hereinafter *Eleven Vehicles II* ]. The Court, however, denied claimants' motion for release of the balance of the properties, approximately 10%–20%, on the grounds that, as to the properties acquired after the effective date of the 1988 amendments, one automobile and two bank accounts, there remained an issue of fact as to whether the properties had been involved in money laundering.[1] *Id.*

On October 3, 1995, the Government moved to stay the Order of September 5, 1995, until either the expiration of the period for taking an appeal or, if an appeal were taken, 30 days after final disposition of such an appeal.[2] The Government contended that, because the issue of retroactive application of the 1988 amendments was one of first impression in this circuit, it needed time to consult with the Department of Justice in Washington, D.C., in order to determine whether to file an appeal. The Court granted the stay, allowing the Government until

---

1. In support of their first motion for summary judgment, claimants filed a supplemental affidavit, attached to which was an agreement executed on November 30, 1989, between the Government and Ferranti International Signal, PLC ("Ferranti"), the British company which in 1987 acquired International Signal and Control Group, PLC ("ISC"). *See* Supplemental Aff. of Robert Clyde Ivy, doc. no. 50, Ex. A. ISC was the company through which Robert Ivy was alleged to have engaged in illegal money laundering activities in the underlying criminal action. In the agreement, the Government accepted Ferranti's representations of ignorance and innocence of criminal activities at the time of its merger with ISC and through the time of the execution of the agreement.

   After the Court issued its Order of September 5, 1995, the only properties that remained sub-

ject to forfeiture were those which could be traced to money laundering transactions which occurred after November 1988, the effective date of the 1988 amendments and approximately one year after Ferranti merged with ISC. Claimants argue that the Government's acceptance of Ferranti's representations of innocence and ignorance demonstrate that its forfeiture theory is "phony": since ISC had merged with Ferranti at least one year prior to the November 30, 1989, execution of the agreement, Ferranti's representations should have been applied by the Government to ISC as well.

2. Prior to this motion, the Government filed two other motions to stay the proceeding on December 12, 1992, *see* doc. no. 39, and on December 13, 1993, *see* doc. no. 67.

November 26, 1995, to complete its review of the case and to determine whether to appeal. *See United States v. Eleven Vehicles,* 1995 WL 635332 (E.D.Pa. Oct. 24, 1995).

On January 16, 1996, the Government again moved for a stay until twenty days after the Supreme Court published its decision on two pending cases concerning double jeopardy, *United States v. $405,089.23 in U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), and *United States v. Ursery,* 59 F.3d 568 (6th Cir.1995).[3] The Court denied this motion on January 29, 1996, and scheduled the case for a non-jury trial on February 5, 1996. Two days later, the Government moved for dismissal of its case against the remaining properties. On February 5, 1996, claimants cross-moved to have the matter dismissed with prejudice. Three days later, the Government moved for the issuance of a certificate of reasonable cause and clarified their motion, requesting that the Court dismiss the case without prejudice.

The Court dismissed the case with prejudice on March 13, 1996, and ordered the balance of the properties released forthwith. The Court retained jurisdiction to entertain the Government's motion for a certificate of reasonable cause and claimants' motion to establish entitlement to costs, attorney's fees, and expenses, both issues to which the Court now turns.

## II. DISCUSSION

### A. *Certificate of Reasonable Cause*

■ Section 2465 of title 28 of the United States Code, entitled, "Return of property to claimant; certificate of reasonable cause; liability for wrongful seizure," provides,

> Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

28 U.S.C. § 2465 (West 1994). The certificate of reasonable cause "protect[s] the person at whose instance the seizure was made, should an action of trespass be brought against him by the claimant for the wrongful seizure of the latter's property." *United States v. Frerichs,* 106 U.S. (16 Otto) 160, 162, 1 S.Ct. 169, 170, 27 L.Ed. 128 (1882). In other words, the statute immunizes government officials from liability and bars successful claimants from recovering costs incurred from the seizure of their property in cases where these officials had "reasonable cause" to seize the property. *See United States v. 255 Broadway,* 795 F.Supp. 1225, 1229 (D.Mass.1992), *aff'd,* 9 F.3d 1000 (1st Cir. 1993).

■ For the purposes of issuing the certificate, "reasonable cause" is essentially the same as "probable cause." *See Stacey v. Emery,* 97 U.S. (7 Otto) 642, 646, 24 L.Ed. 1035 (1878) ("If there was a probable cause of seizure, there was a reasonable cause. If there was a reasonable cause of seizure, there was a probable cause.").

> Probable cause to forfeit requires only a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion that the property is subject to forfeiture. In other words, the government has a relatively light burden of showing probable cause to believe that the subject property is forfeitable. Moreover, because there are so many variables in the probable cause equation, probable cause findings are not invariably bound by precedent.

*255 Broadway,* 9 F.3d at 1004 (citations and internal quotations omitted); *see also United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1071 (9th Cir.1994) ("The standard of probable cause to support a forfeiture is similar to that required for a search warrant. As the requirement is traditionally stated, the government's belief that the property is

---

**3.** Both cases were recently reversed by the Supreme Court in *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

subject to forfeiture must be more than a mere suspicion but can be less than prima facie proof."); *United States v. $67,220.00 in U.S. Currency,* 957 F.2d 280, 284 (6th Cir. 1992) (defining standard as same). "Probable cause to believe that the property is involved in *some* illegal activity is not enough—the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes." *$191,910.00 in U.S. Currency,* 16 F.3d at 1071.

▪ "Because courts have held that 28 U.S.C. § 2465 was enacted to protect the officials responsible for the seizure of potentially forfeitable property, courts generally look to the moment of seizure in considering whether or not to grant the certificate. Thus, rather than considering later developments which either support or counsel against the issuance of the certificate, courts limit their review to the evidence as it existed *at the time of seizure* for purposes of assessing whether reasonable cause for the seizure existed within the meaning of the statute." *United States v. One DLO Model A/C, 30.06 Machine Gun,* 904 F.Supp. 622, 637 (N.D.Ohio 1995) (citing *255 Broadway,* 795 F.Supp. at 1230) (internal quotations omitted). Furthermore, a court's finding that "the government had probable cause to believe that all of the [property] seized ... was subject to forfeiture" must be supported by the circumstances on the date of the institution of the forfeiture proceeding "taken as a whole." *255 Broadway,* 9 F.3d at 1005.

▪ In the instant case, the basis for the Government's probable cause determination is set forth in the affidavit of Special Agent

David G. Herbert. *See* Compl., Ex. 2 ("Herbert Aff."). Special Agent Herbert averred that he was "familiar with the methods used by those engaged in corporate financial fraud to attempt to shield their activities and [that he had] specialized in this investigation in tracing the proceeds of the unlawful activities of ... Robert C. Ivy." Herbert Aff. at ¶ 9. He concluded that "substantially all of Robert C. Ivy['s] ... incomes were the proceeds of [the] unlawful conduct [alleged in the underlying criminal indictment] and these proceeds have been traced to the defendant properties herein." *Id.* at ¶ 12. Furthermore, he attested that "[o]ver the period November 1986 through December 1989, Robert C. Ivy earned in salary, bonuses, stock options and other remuneration approximately $796,000 from ISC. With these proceeds, he purchased or otherwise acquired in whole or part the following defendant properties: [list of the properties later seized in the forfeiture proceeding]." *Id.* at ¶ 13. "Based on the foregoing information, [Herbert concluded that] there is probable cause that the defendant properties are subject to forfeiture under Title 18, United States Code, Section 981(a)(1)(A), (C)." *Id.* at ¶ 17. Relying on the averments contained in the Herbert affidavit, the Government instituted the present civil forfeiture action on October 30, 1991. Warrants were subsequently executed on October 31, 1991, and November 1, 1991, and returned on November 4 & 5, 1991.[4]

The Herbert affidavit provided "a reasonable ground for [the Government's] belief of guilt, supported by less than prima facie proof but more than mere suspicion that the

---

4. In making its probable cause determination at the time of the institution of the forfeiture proceeding, the district court in *255 Broadway* analogized to the approach of the Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See 255 Broadway,* 795 F.Supp. at 1233. "A certificate of reasonable cause should issue where the officer was authorized by a facially valid warrant for seizure, unless the claimant can show that the issuing court was not neutral and detached, that officers knowingly and recklessly falsified information in their affidavit, or that officers simply could not have maintained an objectively reasonable belief that probable cause for seizure existed." *Id.* at 1233 & n. 5.

Clearly, any inquiry into the Government's probable cause requires this Court to examine the circumstances on October 30, 1991. Yet, it is significant that the warrants to seize the properties for forfeiture purposes were issued the next day. The record does not reflect whether the issuance of the warrants was based solely on the information provided in the complaint, i.e., Special Agent Herbert's affidavit, although it is very likely that this occurred. If the warrants were not issued pursuant to any additional information, then, like the district court in *255 Broadway,* this Court would find that the issuance of the warrants for forfeiture purposes would be enough for a court to certify reasonable cause under § 2465.

propert[ies were] subject to forfeiture." *255 Broadway*, 9 F.3d 1000. Keeping in mind the Government's "relatively light burden of showing probable cause to believe that the subject property is subject to forfeiture," *id.*, the Court concludes that seizure of all of claimants' property at the time of the institution of the proceeding was supported by probable cause. Since probable cause is essentially the same as reasonable cause, a certificate of reasonable cause shall issue.[5]

### B. Attorney's Fees, Costs, and Expenses under the EAJA

■ Once a court determines that a certificate of reasonable cause shall issue, the government official is immunized from claimants seeking to recover costs incurred in defending the action. However, "[t]he statute speaks only in terms of 'costs,' and [the Court has been] referred to no instance where a statutory award of costs under § 2465 has been interpreted to include lawyer's fees." *255 Broadway*, 795 F.Supp. at 1234. Thus, the Court concludes "that the certificate of reasonable cause under § 2465 does not bar the claimant[s] from seeking attorney fees under the EAJA." *Id.; see also United States v. One Parcel of Real Estate*, 864 F.Supp. 1267, 1269 (S.D.Fla.1994) ("As I understand 28 U.S.C. § 2465, it operates primarily to immunize prosecutors, and those persons who perform the actual seizure, from individual liability for suits or judgments resulting from a claimant's successful defense of a forfeiture action. The statute envisions that a 'certificate' of reasonable cause for the seizure may issue and that such certificate will not only immunize the prosecutor but will also prohibit a claimant from recovering the 'costs' of litigating the forfeiture action. The term 'costs' in 28

U.S.C. § 2465 does not embrace attorney['s] fees.") (citing *255 Broadway*, 795 F.Supp. at 1234). Having found that issuance of a certificate of reasonable cause is warranted in this case and that the Government is therefore immune from liability for costs, this Court now turns to the question of whether claimants are entitled to attorney's fees.

"[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 163, 110 S.Ct. 2316, 2321, 110 L.Ed.2d 134 (1990). The specific statutory goals of the EAJA are to "encourag[e] private parties to vindicate their rights and [to] curb[ ] excessive regulation and the unreasonable exercise of Government authority." *Id.* at 164, 110 S.Ct. at 2322 (internal quotations omitted).

■ Section 2412(d)(1)(A) of title 28, United States Code, entitled "Costs and fees," provides,

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (West 1994 & Supp.1996). "Thus, eligibility for a fee award

---

**5.** On claimants' first motion for summary judgment, the Court ruled that the Government had probable cause to forfeit with respect to claimants' properties seized pursuant to 18 U.S.C. § 981(a)(1)(A); however, the Government lacked probable cause with respect to other defendant properties under 18 U.S.C. § 981(a)(1)(C). *See Eleven Vehicles I*, 836 F.Supp. at 1159–60, 1163. Claimants also contend that the Government's probable cause ultimately supported the seizure of only a small percentage, between 10% and 20%, of the total properties seized, and that this percentage should preclude the issuance of a

certificate of reasonable cause. Since the Court's inquiry involves the Government's probable cause at the time the forfeiture proceeding was instituted, later developments, such as probable cause determinations at the summary judgment stage and the Court-ordered release of various properties, are not pertinent here. *See 255 Broadway*, 9 F.2d at 1005 (holding that a court's finding that "the government had probable cause to believe that all of the [property] seized ... was subject to forfeiture" must be supported by the circumstances "taken as a whole" on the date of the initiation of forfeiture proceeding).

in any civil action requires: (1) that the claimant be a prevailing party; (2) that the government's position was not substantially justified; (3) that no special circumstances exist to make an award unjust; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." [6] *Jean,* 496 U.S. at 158, 110 S.Ct. at 2319 (internal quotations omitted).

### · 1. *Prevailing Party*

"In EAJA cases, the court first must determine if the applicant is a prevailing party by evaluating the degree of success obtained.... As we held in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the prevailing party requirement is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is reasonable." *Jean,* 496 U.S. at 160–61, 110 S.Ct. at 2320 (internal quotations omitted). In addition, the Third Circuit has stated "that no conclusive weight should be given to the form of the judgment; rather, to determine prevailing party status [the courts] look to the substance of the litigation's outcome." *Dunn v. United States,* 842 F.2d 1420, 1433 (3d Cir. 1988).

> The test for prevailing party status is essentially a twofold inquiry. Although framed in various ways, the first part of the test is whether plaintiff [or the party seeking attorney's fees] achieved some of the benefit sought by the party bringing suit. The second part of the prevailing party test is that of causation, i.e., whether

the litigation constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief. Thus, the plaintiff's lawsuit need not be the sole cause of defendant's action. Moreover, a district court must apply the most expansive definition of causation. The district court must determine whether the plaintiff's lawsuit is causally linked to the relief obtained, i.e., whether it changed the defendant's conduct or the action to be undertaken.

*Id.* (citations and internal quotations omitted); *see also Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939 ("A typical formulation is that plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (citation and internal quotations omitted).

■ It is crystal clear that claimants are the prevailing party. Simply put, the "substance of the litigation's outcome" is that claimants succeeded in obtaining the release of one hundred percent of the properties originally seized by the Government, either through litigation with or by consent of the Government.

### 2. *Substantial Justification and Special Circumstances*

■ "Substantial justification under the EAJA has been defined by the Supreme Court as 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.' Alternatively phrased, [the Government's position] is substantially justified if it has a reasonable basis in both law and fact." *Hanover Potato Prod-*

---

**6.** The Court's Order of April 2, 1996, doc. no. 148, provided that claimants' motion for an award of fees under the EAJA would be limited to the issue of entitlement. Claimants' counsel could submit an itemized statement of hours or rates after the Court had ruled on the legal question of entitlement. *See also* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert

witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed....").

Moreover, the Court notes that the Government does not dispute that claimants satisfy the economic requirements of a petitioner for fees. *See* Gov't's Resp. to Claimants' Mot. to Establish Entitlement to an Award of Costs and Reasonable Att'y Fees and Expenses, doc. no. 154, at 29 n. 9; *see also* 28 U.S.C. § 2412(d)(2)(B) (" '[P]arty' means ... an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed....").

*ucts, Inc. v. Shalala,* 989 F.2d 123, 128 (3d Cir.1993) (citing *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)). "The burden of demonstrating substantial justification for its position rests squarely on the government agency." *Id.* For the Government to meet its burden, it must show, first, a reasonable basis in truth for the facts alleged; second, a reasonable basis in law for the theory it propounded; and, third, a reasonable connection between the facts alleged and the legal theory advanced. *Id.* at 128 (modifying the Third Circuit's three-part test in the wake of *Pierce* ).

■ "Moreover, under [the EAJA], 'the position of the United States' includes not only the position taken in the litigation, but the agency position that made the litigation necessary in the first place. Thus, unless both the agency's litigation and prelitigation positions meet the modified three-part criteria ... the government's position is not substantially justified." *Id.* (citations omitted).[7]

■ The agency position may be viewed as the Government's decision to institute the forfeiture proceeding. *See 255 Broadway,* 9 F.2d at 1006. A district court's determination that the Government's agency position was not substantially justified under the EAJA "hinges entirely on [its] finding that the government failed to meet its initial burden of showing probable cause." *Id.* at 1006–07. Conversely, the issuance of a certificate of reasonable cause, which demonstrates that the Government had probable cause in instituting the forfeiture proceeding, supports the conclusion that the Government's agency position was substantially justified. *See also United States v. Plat 20, Lot 17,* 960 F.2d 200, 209 (1st Cir.1992) ("In the forfeiture context, probable cause is often the functional equivalent of substantial justification."); *United States v. One 1985 Chevrolet Corvette,* 914 F.2d 804, 809 (6th Cir.1990) (" '[S]ubstantially justified' and 'probable

cause' are standards which require reasonableness. Therefore, when the government established probable cause in the forfeiture proceeding, its position was substantially justified.").

On the other hand, the litigation position involves analysis of the Government's actions *after* its initiation of the forfeiture proceeding. *See 255 Broadway,* 9 F.2d at 1006. In determining whether the Government's litigation position was substantially justified, a district court examines later developments in the forfeiture proceeding. *See, e.g., One 1985 Chevrolet Corvette,* 914 F.2d at 809 (holding that district court did not err in finding probable cause for forfeiture where "[t]he government's position in initiating the forfeiture proceeding was substantially justified, and nothing that occurred during the trial required the government to abandon the proceeding"); *255 Broadway,* 9 F.3d at 1007 ("[T]he claimant points to no intervening evidence that might have given the government pause over whether to continue onward with the case.") (quoting district court opinion, 795 F.Supp. at 1237). "[N]ewly unearthed information," *255 Broadway,* 795 F.Supp. at 1237, or subsequent events, such as unreasonable delays, may contribute to a district court's determination that the Government's litigation position was not substantially justified. *See United States v. $12,248 U.S. Currency,* 957 F.2d 1513 (9th Cir.1991) (holding that Government was not substantially justified in its litigation position, despite court's finding of probable cause for initial seizure, where Government conducted a poor investigation of claim and failed to verify claimant's story, where Government unreasonably delayed in pursuing and processing litigation of forfeiture claim, thirteen months having elapsed between seizure and institution of forfeiture proceeding, and where court ultimately found at trial which occurred four years after initial seizure that seized property had independent source and had not been used illegally) [8]; *see*

---

7. Section 2412(d)(2)(D), provides,
    "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings....
    28 U.S.C. § 2412(d)(2)(D).

8. In *$12,248 in U.S. Currency,* the Ninth Circuit noted,

also *United States v. Eighty–Eight (88) Designated Accounts*, 786 F.Supp. 1578, 1582 (S.D.Fla.1992) ("The Court finds that the Government lacked substantial justification for its position with respect to the [claimants'] account because it only had probable cause to believe that less than thirteen percent of the total account was subject to forfeiture. The Government's position is not substantially justified simply because it adduces 'some evidence' supporting its position.").

The Supreme Court has also recognized that a district court's determination of "whether the Government's litigating position has been 'substantially justified' is ... a multifarious and novel question." *Pierce*, 487 U.S. at 562, 108 S.Ct. at 2548. "[B]ecause the number of possible situations is large, we are reluctant either to fix or sanction narrow guidelines for the district courts to follow." *Id.* (internal quotation omitted).

■■■ Although the Government's position must be viewed separately in the "agency" context and the "litigation" context, the district court must ultimately make a "single finding that the Government's position lack[ed] substantial justification ... thus [determining] a one-time threshold for fee-eligibility." *Jean*, 496 U.S. at 160, 110 S.Ct. at 2320. "While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Id.* at 161–62, 110 S.Ct. at 2320.

■■■ Here, viewing the case as an inclusive whole, the Court finds that the Government lacked substantial justification for its position. It is clear that, because the Government had probable cause when instituting the forfeiture proceeding, it was substantially justified in its agency position. Yet, the same cannot be said of the Government's litigation position.

The Government's legal position in this litigation has been problematical from the outset. First, it is significant that, although the Government alleged wire fraud in the initial forfeiture complaint as one of the predicate acts under which claimants acquired some of the defendant properties, the Government failed to press any arguments or produce any evidence in support of this theory, ultimately abandoning it by default. *See Eleven Vehicles I*, 836 F.Supp. at 1162. Moreover, before the litigation, the Government came to accept the representations of innocence and ignorance by the parent company of the enterprise through which Robert Clyde Ivy was alleged to have engaged in his illegal activities. *See* supra note 1. It was patently unreasonable for the Government to have expected to prove its theory of criminal money laundering against Robert Clyde Ivy, while simultaneously exonerating the very agency through which Robert Clyde Ivy was supposed to have laundered the money.

In addition, the Government lacked a reasonable basis in fact and in law with respect to almost half the defendant properties. The record demonstrates that claimants provided

Specifically, we hold that the government's position was not substantially justified because the government violated the claimant's Fifth Amendment due process rights by depriving him of his property for an unreasonable period of time.

The Supreme Court has enunciated a four factor test to determine whether the government has violated due process in the length of time it delays instituting forfeiture proceedings. *United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 564, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983). The court must examine the length of the delay, the reason for the delay, the timely assertion of the claim, and prejudice. 957 F.2d at 1517–18. "Due process concerns are implicated where there is a delay between the seizure of the property and the postseizure

filing of a judicial forfeiture action ... because a property owner is entitled to be heard at a meaningful time after the deprivation of property that is caused by a seizure." *United States v. 92 Buena Vista Ave.*, 738 F.Supp. 854, 862 (D.N.J. 1990) (citing *$8,850 in U.S. Currency*, 461 U.S. at 563, 103 S.Ct. at 2011), *aff'd in part and remanded in part on other grounds by* 937 F.2d 98 (3d Cir.1991), *aff'd* 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993).

In the instant case, claimants' due process rights are not implicated under the four factor test in *$8,850 in U.S. Currency*. Claimants have not contended that the Government delayed unreasonably in instituting the forfeiture proceeding; rather, they argue that the Government has engaged in delay tactics from the initiation of the proceeding to the ultimate dismissal of the case.

the Government with "intervening evidence that might have given the government pause over whether to continue onward with the case." *See 255 Broadway,* 9 F.3d at 1007 (quoting 795 F.Supp. at 1237).

As early as January 21, 1992, the date of Irene Ivy's letter to the United States Attorney General petitioning for remission or mitigation, the Government knew that claimants had acquired certain properties prior to the statutes' effective date and the dates of the money laundering alleged in the complaint. *See* Aff. of Irene Ivy, doc. no. 32, at Ex. A. Moreover, after claimants filed their first motion for summary judgment on November 5, 1992, the Government was notified a second time that certain defendant properties had been acquired prior to October 27, 1986. *See id.* at 7–8; Aff. of Robert Clyde Ivy, doc. no. 32, at 6–11 & Ex. G, H, & I.

The Court therefore concludes that the Government's litigation position with respect to almost half the defendant properties became untenable, at least by November 5, 1992, since it knew that it lacked a reasonable basis both in fact and in law for retaining those properties.[9]

Finally, the Court notes that the Government's litigation posture has displayed a pattern of delay from the outset of this proceeding. The Government failed to respond on a timely basis to claimants' first motion for summary judgment, filed on November 5, 1992. This prompted the Court to issue an Order on December 4, 1992, requiring the Government to file its response within seven days of the issuance of the Order. Instead, on December 11, 1992, the Government sought a stay in the proceeding and a protective order. Then, on December 15, 1992, the

Government filed an out-of-time motion for an extension of time to respond to the summary judgment motion after the Court's disposition of its motion for a stay. The Government ultimately filed its response on March 1, 1993.

On December 13, 1993, the Government filed its second motion to stay the civil forfeiture proceeding pending disposition of the criminal trial involving Robert Clyde Ivy. The Court granted a stay until March 21, 1994.

The Court granted a third stay in the proceeding on March 25, 1994, by agreement of both parties. The stay was partially lifted on July 6, 1994, to enable claimants to file a motion for summary judgment. Up to this point, the various stays, most of which were granted at the Government's request, had delayed the proceeding for almost two years from the time of the disposition of claimants' first summary judgment motion to the disposition of their second summary judgment motion.

On October 3, 1995, the Government moved the Court for a fourth stay of the proceeding, so that it could consider whether to appeal the Court's ruling on the second summary judgment motion. The Court stayed the proceeding until November 26, 1995. The Government, however, elected not to file an appeal.

Thereafter, on December 13, 1995, the Court held a status conference. During the conference and five years after instituting this action, the Government requested ninety days for discovery in order to take four depositions. The depositions requests were winnowed to two, and the Government recast its discovery request to one for sixty days.

---

9. The Court notes that its ruling on claimants' first summary judgment motion further confirms the fact that the Government lacked a reasonable basis in fact and in law for retaining those properties until their Court-ordered release. The Government failed to show probable cause for the defendant properties acquired prior to the enactment of the money laundering statutes, 18 U.S.C. §§ 1956 & 1957, on October 27, 1986. *See Eleven Vehicles I,* 836 F.Supp. at 1156–58. The Court's decision resulted in the release of approximately 40–45% of the defendant properties, almost two years after the Government instituted the forfeiture proceeding.

On claimants' second summary judgment motion, the Court ruled that forfeiture of the property acquired prior to the effective date of the 1988 amendment to 18 U.S.C. § 981(a)(1)(A) resulted in an impermissible retroactive application of the law. *See Eleven Vehicles II,* 898 F.Supp. at 1147. Although another 40%–45% of the original properties seized was ultimately released to claimants, because this issue was one of first impression in this circuit, the Government had at least a colorable claim against those properties. Therefore, the Court cannot find that the Government's litigation position with respect to the second motion was unreasonable.

The Court set the discovery deadline thirty days from the date of the conference, and set the case for trial on February 5, 1996.

The Government filed yet a fifth motion for a stay on January 16, 1996, the day before the expiration of the discovery deadline. This motion was denied. The next day, the Government filed a motion for an extension of time to file its pretrial submissions. The Court granted the Government only until January 25, 1996, for filing its pretrial submissions, leaving the trial date in place.

Finally, on January 31, 1996, on the eve of trial, the Government raised the white flag on its remaining claims. At the time of the Government's surrender, only one automobile and two bank accounts remained of the original properties seized. A perusal of the procedural history of the case leads the Court to conclude that the Government sought to stay the proceeding in an attempt to retain claimants' properties for as long as possible, pending disposition of the underlying criminal case against Robert Clyde Ivy.

Because the Government has failed to demonstrate that it had a reasonable basis in truth for the facts alleged in the complaint, a reasonable basis in law for the theory it propounded, and a reasonable connection between the facts alleged and the legal theory advanced, the Court finds that its litigation position was not substantially justified. Considering the case as an inclusive whole, the Court finds that the Government's position was not substantially justified and that claimants are entitled to an award of attorney's fees.[10]

### 3. *Special Circumstances*

In determining the existence of special circumstances which would make the award of attorney's fees unjust, the EAJA "explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees." *Taylor v. United States*, 815 F.2d 249, 252 (3d Cir.1987) (citation and internal quotation omitted).

The court must consider the equities of circumstances in light of Congress's decision to enact the EAJA in order to ensure that persons will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights. That few courts apparently have relied upon this exception to EAJA awards in denying fee applications is evidence that the circumstances of a case will infrequently justify a denial of an award.

*Id.* at 253 (citation and internal quotation omitted).

▮ The Government argues that special circumstances in this case would make the award of attorney's fees unjust. First, the Government contends that claimants' use of their own affidavits to support their summary judgment motions and the subsequent assertions of their Fifth Amendment privileges at depositions and at any trial of the case indicate unclean hands. The Court finds this argument spurious.

As [the Third Circuit] has explained, the equitable doctrine of unclean hands is not a matter of defense to the defendant. Rather, in applying it courts are concerned primarily with their own integrity, and with avoiding becoming the abettor of iniquity. Thus, the doctrine is to be applied only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.

*Northeast Women's Ctr., Inc. v. McMonagle* 868 F.2d 1342, 1354 (3d Cir.) (citations and internal quotations omitted), *cert. denied,* 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989). While adverse legal consequences may flow from claimants' assertion of their Fifth Amendment privileges in a civil proceeding, such an assertion is not the equivalent of unclean hands.

Throughout the litigation, the Government has failed to recognize that the guilt or innocence of Robert Clyde Ivy is not the issue in this case. The forfeiture statutes do not

---

**10.** To the extent that claimants appeared before the Court *pro se,* they are not entitled to attorney's fees.

authorize the Government to impose its own brand of punishment upon a private party by withholding property from that party, solely on the theory that the private party has been accused of committing a crime. The Court finds no special circumstances which would render an award of attorney's fees unjust.

### 4. Special Factors

"The EAJA provides that attorney's fees 'shall be based upon prevailing market rates for the kind and quality of the services furnished,' but 'shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.'" *Pierce,* 487 U.S. at 571, 108 S.Ct. at 2553 (quoting 28 U.S.C. § 2412(d)(2)(A)(ii)). The "special factor" exception has been defined by the Supreme Court to

> refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.
>
> For the same reason of the need to preserve the intended effectiveness of the $75 cap, we think the other "special factors" envisioned by the exception must be such as are not of broad and general application. We need not specify what they might be, but they include nothing relied upon by the District Court in this case. The "novelty and difficulty of issues," "the undesirability of the case," the "work and ability of counsel," and "the results obtained" ... are factors applicable to a broad spectrum of litigation; they are little

more than routine reasons why market rates are what they are.

*Id.* at 572–73, 108 S.Ct. at 2554.

Here, it is clear that the case was "undesirable," as evidenced by the difficulty claimants experienced in retaining counsel due to their inability to pay. Moreover, the Court recognizes that the issues were novel and difficult and that claimants' counsel, Charles Ivy, Esq., produced work of high quality. Without his assistance, it is likely that justice would not have been served in this case. *See $12,248 in U.S. Currency,* 957 F.2d at 1521 ("Without his counsel's voluntary assistance, the court has [no] doubt that [claimant] would have been unable to afford private counsel. And without the able assistance of [counsel], [claimant] would have lost [his property] to the government. An award of attorney's fees in this case truly serves the public policy rationale of the EAJA.") (quoting the lower court's decision to award attorney's fees to counsel).

Under *Pierce,* however, such factors cannot be taken into account. Moreover, unlike the attorneys with "distinctive knowledge" or "specialized skill" mentioned in *Pierce,* Mr. Ivy has acknowledged that he "had no knowledge of or experience in civil *in rem* forfeiture law until early October 1992, when [he] began work on this case." Mem. in Supp. of Claimants' Mot. to Establish Entitlement to an Award of Costs and Reasonable Att'y Fees and Expenses, doc. no. 149, Ex. B, at ¶ 4 ("Ivy Aff.").

Mr. Ivy, brother of claimant Robert Clyde Ivy, contends that his participation in this case was a cause of hardship to himself and to his practice. He also argues that what originated as a one day appearance for the limited purpose of arguing a summary judgment motion became a litigation lasting three and a half years. The Court notes, however, that Mr. Ivy could have sought to be excused from the proceeding at any time, but never asked for permission to do so. Thus, the Court concludes that, while Mr. Ivy remained in this case for three and a half years and performed under admittedly difficult circumstances, he did so of his own volition.

█ In the alternative, Mr. Ivy contends that an increase of 49.7% in the cost of living, from the effective date of the amended EAJA on October 1, 1981, to the present, *see* Ivy Aff. at ¶ 10, warrants an adjustment to his hourly rate. This second argument is well-taken. *See* 28 U.S.C. § 2412(d)(2)(A)(ii) ("[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines than an increase in the cost of living . . . justifies a higher fee."); *see also Dewalt v. Sullivan*, 963 F.2d 27, 30 (3d Cir.1992) ("We conclude that, in awarding fees pursuant to § 2412(d) of the EAJA, the court is required to apply the statutory cap, as affected by general inflation since 1981, and that the [Consumer Price Index for All Urban Consumers], rather than the personal-services component of that index, provides an appropriate measure of such inflation."). Therefore, the Court will allow Mr. Ivy an increase in his hourly rate from $75.00 per hour to $112.28 per hour.

## III. CONCLUSION

For the foregoing reasons, the Government's motion for a certificate of reasonable cause is granted. Claimants' motion for attorney's fees, expenses, and costs is granted in part and denied in part. Claimants shall be awarded attorney's fees at the hourly billing rate of $112.28 per hour.

Appropriate orders follow.

### ORDER

**AND NOW,** this 29th day of August, 1996, upon consideration of Government's Motion and Memorandum in Support Thereof to Strike from the Record Claimants' Addendum to Memorandum in Support of Claimants' Motion to Establish Entitlement to an Award of Costs and Reasonable Attorney Fees and Expenses (doc. no. 153) and claimants' response thereto (doc. no. 155), it is

**ORDERED** that the Government's motion is **DENIED.**[1]

**AND IT IS SO ORDERED.**

### ORDER

**AND NOW,** this 29th day of August, 1996, upon consideration of Motion of the Government for a Certificate of Reasonable Cause (doc. no. 129), the memoranda in support thereof, and the responses thereto (doc. nos. 130, 150, 152, & 156), it is **ORDERED** that the Government's motion is **GRANTED.**

**AND IT IS SO ORDERED.**

### ORDER

**AND NOW,** this 29th day of August, 1996, upon consideration of Claimants' Motion to Establish Entitlement to an Award of Costs and Reasonable Attorney Fees and Expenses (doc. no. 149), the Government's response thereto (doc. no. 154), and claimants' reply memorandum in support thereof (doc. no. 157), it is **ORDERED** that claimants' motion is **GRANTED IN PART and DENIED IN PART.** Claimants shall submit an itemized statement of counsel's hours and rates by **September 30, 1996.** The Government may file any objections by **October 30, 1996.**

**AND IT IS SO ORDERED.**

█

---

1. The Government contends that the document proffered to the Court in the Addendum in support of claimants' memorandum (doc. no. 149) is not part of the record in the underlying civil action for which claimants seek fees and expenses. The document at issue, however, was filed in this case on March 19, 1993, as Exhibit A to the Supplemental Affidavit of Robert Clyde Ivy (doc. no. 50). While the addendum to may have been redundant, it does not constitute any additional evidence that claimants are seeking belatedly to interject into the record.